[S.F. No. 23869. July 18, 1979.]

SOUTHERN CALIFORNIA GAS COMPANY, Petitioner, v.
PUBLIC UTILITIES COMMISSION, Respondent.

[S.F. No. 23870. July 18, 1979.]

SOUTHWEST GAS CORPORATION, Petitioner, v.
PUBLIC UTILITIES COMMISSION, Respondent;
SAN DIEGO GAS AND ELECTRIC COMPANY et al.,
Real Parties in Interest.

[S.F. No. 23871. July 18, 1979.]

SAN DIEGO GAS AND ELECTRIC COMPANY, Petitioner, v.
PUBLIC UTILITIES COMMISSION, Respondent;
SOUTHERN CALIFORNIA GAS COMPANY et al.,
Real Parties in Interest.

654

COUNSEL

Thomas D. Clarke, David B. Follett, James C. Camp, Douglas Kent Porter, Gordon Pearce, Leslie R. Kalin, Stephen A. Edwards, Jeffrey L. Guttero and Thomas F. Mulvaney for Petitioners in Nos. 23869 and 23871 and for Real Parties in Interest in Nos. 23870 and 23871.

Charles H. McCrea for Petitioner in No. 23870.

Janice E. Kerr, Hector Anninos and Walter H. Kessenick for Respondent.

OPINION

MANUEL, J.—Petitioners in these proceedings, consolidated for purposes of review, challenge a decision of the Public Utilities Commission (commission) which purports to implement the Home Insulation Assistance and Financing Act, Public Utilities Code sections 2781-2788, enacted in 1975.[1] Section 2782 of the act directs the commission to permit utility companies to institute home insulation assistance and financing programs and to develop and adopt such requirements as it finds necessary or desirable to implement the provisions of the act.

In January 1976, the commission began an investigation into the requirements necessary or desirable for implementation of the act. In February 1977, the commission amended its order of investigation to require the four major utility companies—Pacific Gas and Electric, Southern California Gas Company, Southern California Edison Company, and San Diego Gas and Electric Company—to file with the commission proposals for home attic insulation programs with the following financing alternatives: (1) the utility absorbing all costs associated with the program, and (2) the utility absorbing a significant portion with the customer paying the balance as a surcharge for service.

On March 7, 1978, after 20 days of public hearings, the commission issued Decision No. 88551. This decision (1) orders the utilities to offer loans at 8 percent per annum for financing residential attic insulation with a maximum repayment period of 60 months (financing program), (2)

---

[1] Unless otherwise indicated, all statutory references hereafter are to the Public Utilities Code.

establishes interim standards for such utility sponsored installations, and (3) directs the utilities to offer to install free energy conservation accessories in homes that meet the minimum insulation requirements (incentive program).[2]

In Decision No. 88928, the commission granted a rehearing on the incentive program, made minor modifications in the financing program portion of Decision No. 88551 and denied rehearing on it. The commission then in Decision No. 89093 stayed the order requiring implementation of the financing program "until further order."

Petitioners challenge only the portion of the decision relating to the financing program. They contend that the commission exceeded its authority in imposing a mandatory program and in setting more stringent financing terms than those set forth in the Home Insulation Assistance and Financing Act. They also contend that the commission failed to give adequate consideration to the antitrust implications of its order and that the commission's failure to provide for concurrent cost recovery is confiscatory.[3]

■ We consider first the question of the commission's authority to order the financing program, deeming the answer to be dispositive of this proceeding. ■ The commission is a regulatory body of constitutional origin, deriving certain of its powers by direct grant from the Constitution. (Cal. Const., art. XII, §§ 1-9; *People v. Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 634 [268 P.2d 723].) The Legislature is given plenary power to confer other powers upon the commission. This plenary power, however, is subject to the limitation that the additional powers bestowed upon the commission must be "cognate and germane to the regulation of public utilities." (*People v. Western Air Lines, Inc., supra,* 42 Cal.2d at p. 634; *Morel v. Railroad Commission* (1938) 11 Cal.2d 488, 492 [81 P.2d

[2]Pacific Gas and Electric (P.G. & E.) was ordered to implement a home insulation assistance loan program with similar loan terms in Decision No. 88272, issued December 20, 1978, on P.G. & E.'s application for a rate increase to offset the cost of conservation programs. P.G. & E. apparently acquiesced in the order.

[3]Petitioner Southwest Gas Corporation additionally contends that since it is an interstate utility doing business in Arizona and Nevada as well as in California, the commission's failure to provide for concurrent cost recovery will force its customers in other states to subsidize a California program, thus placing a burden on interstate commerce in violation of article I, section 8 of the United States Constitution. This contention, however, is not properly before us because it was not raised in the petition for rehearing before the commission. (§ 1732; *Southern Pac. Transportation Co. v. Public Utilities Com.* (1976) 18 Cal.3d 308, 311-312, fn. 2 [134 Cal.Rptr. 189, 556 P.2d 289].)

144].) "As to the scope of those powers we look to the legislation enacted . . . , principally the Public Utilities Code, and to the decisions of this court in construing them." (*People* v. *Western Air Lines, Inc., supra,* 42 Cal.2d at p. 634.)

As previously noted, the Home Insulation Assistance and Financing Act is contained in sections 2781 through 2788. Section 2781 defines the terms electrical or gas corporation. Section 2782 states: "The commission shall permit any electrical or gas corporation to institute a home insulation assistance and financing program for its residential customers in accordance with the provisions of this chapter [sections 2781-2788]. The commission shall develop and adopt, by regulation or order, such requirements as it finds are necessary or desirable to implement the provisions of this chapter." Section 2783 states that "A home insulation assistance and financing program shall meet the requirements specified in Sections 2784 to 2786, inclusive, and such other requirements as the commission may impose." Sections 2784 through 2786 specify the qualifications for receiving such assistance, the method by which insulation work is to be done, the standards for it, the method of repayment by the customer and the maximum finance charges. Section 2787 authorizes an alternative financing arrangement in which the financing is provided by lending institutions rather than the utility companies. Section 2788 directs the commission to allow for the expenses of such a program when setting rates.

Nowhere in the Home Insulation Assistance and Financing Act is the commission authorized to *require* a utility to institute an insulation financing program. The commission acknowledges this but asserts that it has such power under the broad power given it in sections 701 and 702. Section 701 provides: "The commission may supervise and regulate every public utility in the State and may do all things, whether specifically designated in this part or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction." Section 702 requires every public utility to comply with every commission order concerning any matter "in any way relating to or affecting its business as a public utility."

Petitioners contend, however, that any authority the commission may have had under sections 701 and 702 to require home insulation financing programs is superseded and thus limited by the Home Insulation Assistance and Financing Act which expressly gives the commission the authority only to *permit* such programs. Petitioners rely on *Pacific Tel. &*

*Tel. Co.* v. *Public Util. Com.* (1965) 62 Cal.2d 634 [44 Cal.Rptr. 1, 401 P.2d 353], wherein the commission attempted to ignore specific provisions of section 728 on rate fixing and relied on its general power under section 701. In annulling the commission's action, we said: "Whatever may be the scope of regulatory power under this section [701], it does not authorize disregard by the commission of express legislative directions to it, or restrictions upon its power found in other provisions of the act or elsewhere in general law." (*Id.,* at p. 653.) Petitioners argue that the commission is similarly precluded in the present case from relying on sections 701 and 702. The commission disagrees, asserting that section 2782 of the Home Insulation Assistance and Financing Act is not a limitation on its power under section 701 because the two code sections may be harmonized by interpreting the words "shall permit" in section 2782 to mean that the commission "shall not prohibit" such insulation financing programs. Petitioners, on the other hand, assert that the use of the words "shall permit" connotes a permissive rather than mandatory program and that the express authorization of a permissive program impliedly precludes the authority to institute a mandatory program.

■ When a statute is theoretically capable of more than one construction we are obliged to choose that which most comports with the intent of the Legislature. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 232 [110 Cal.Rptr. 144, 514 P.2d 1224].) In enacting the Home Insulation Assistance and Financing Act, the Legislature appears to have intended to establish only a permissive program. Legislative committee analyses of the bill that created the act (Assem. Bill No. 1265, introduced by Assemblyman Kapiloff on Mar. 20, 1975, which became ch. 1202) specifically and repeatedly stated that the bill would merely permit rather than require utility participation.[4] For example, the analysis by the Assembly Committee on Energy and Diminishing Materials stated: "This bill does not require utilities to establish insulation assistance and financing programs. It simply directs the Public Utilities Commission to permit such programs if initiated by the utilities, and to consider them legitimate programs." The analysis prepared for the Assembly Ways and Means Committee stated: "No dramatic PUC caseload is anticipated, but a minor rise in utility costs would be anticipated. The program is permissive with regard to the utilities

[4]These include analyses prepared for the Assembly Committee on Energy and Diminishing Materials; for the Assembly Ways and Means Committee; for the Senate Public Utilities, Transportation and Energy Committee; for the Assembly vote of concurrence with Senate amendments by the Assembly Office of Research; for the Senate third reading by the Senate Democratic Caucus; and an analysis by the Legislative Analyst.

involved, so no projections are available as to the extent of the participation." Statements in legislative committee reports concerning the statutory objects and purposes which are in accord with a reasonable interpretation of the statute are legitimate aids in determining legislative intent. (*Southern Pac. Co.* v. *Ind. Acc. Com.* (1942) 19 Cal.2d 271, 275 [120 P.2d 880].)

■ The Legislature's express decision to enact a permissive program cannot reasonably be interpreted to have included an intent to allow the commission to institute mandatory programs under the general provisions of sections 701 and 702. The maxim *expressio unius est exclusio alterius* is applicable here. Clearly the express authorization of a permissive program impliedly precludes any authority to impose a mandatory program. Accordingly, we conclude that the commission lacks the authority to require the implementation of an insulation financing assistance program.

The commission also lacks the authority to disregard the specific financing provisions set forth in the Home Insulation Assistance and Financing Act. (Cf. *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1964) 228 Cal.App.2d 1 [39 Cal.Rptr. 192].) Section 2786 provides that finance charges "shall not be greater than the maximum allowable finance charges permitted for retail installment contracts." That would be 10 percent per annum. (See Civ. Code, § 1805.1.) The commission, however, ordered the loan interest rate to be 8 percent per annum. Section 2786 further provides that the utility "may require an initial payment toward the insulation services of not greater than 20 percent with the balance due payable in equal installments during a period of 36 months following completion of the work, or at such greater rate of repayment as the customer may elect." In contrast, the commission's order states that the loan "shall . . . [have] a maximum payback period of sixty months."

The Legislature gave careful consideration to the financing provisions of the Home Insulation Assistance and Financing Act. The initial draft of Assembly Bill No. 1265 (1975-1976 Reg. Sess.) provided for a maximum interest rate of 12 percent per annum with 36 months to repay. In May 1975, the bill was amended to provide that the interest rate "shall not exceed that rate of interest which the commission determines is the interest rate established by lending institutions in this state for home improvement loans." The bill was amended again in September 1975, to read in its present form. The legislative history and specificity of the financing provisions belie the commission's assertion that the Legislature

intended for the commission to be authorized to impose different financing terms.

Although we are mindful of the importance of energy conservation in today's society, we must nevertheless conclude that the Legislature has not yet bestowed upon the commission the power to mandate the institution of home insulation financing assistance programs. Since the commission's lack of authority to order the financing program requires annulment of that portion of the decision, we need not reach the other contentions advanced by petitioners as grounds for its annulment. Those portions of Decision No. 88551, as modified by Decision No. 88928, which purport to require the implementation of a home insulation financing program are annulled.

Bird, C. J., Mosk, J., Clark, J., Richardson, J., and Racanelli, J.,* concurred.

Newman, J., dissented.

---

*Assigned by the Chairperson of the Judicial Council.