[Crim. No. 22474. First Dist., Div. Two. Feb. 18, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
BENNIE BUDDY MOSQUEDA, Defendant and Appellant.

COUNSEL

Denalee P. Vertner for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Thomas A. Brady and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GRANT, J.*—By information filed September 8, 1980, appellant Bennie Buddy Mosqueda was charged with two violations of Health and

*Assigned by the Chairperson of the Judicial Council.

Safety Code section 11377, subdivision (b), possession of LSD and methamphetamine (counts I and II), violation of Health and Safety Code section 11357, subdivision (b), possession of marijuana (count III) and violation of Penal Code section 647, subdivision (f), intoxication in a public place (count IV). Two prior felony convictions were also alleged. Appellant pled not guilty. A motion to dismiss under Penal Code section 995 and a motion to suppress under Penal Code 1538.5 were filed and submitted on the transcript of the preliminary hearing. After the motions were denied appellant pled guilty to counts I and II and admitted one prior. The remaining counts were dismissed. Appellant received four years formal probation on condition he spend one year in the county jail.

Appellant's contentions are the following: (1) the accelerated booking search exception to the warrant requirement does not extend to closed containers, (2) the full body search of appellant at the time of arrest violates the rule of *People v. Longwill* (1975) 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753], and (3) the detention and arrest were a pretext to search appellant.

## FACTS

On May 31, 1980, around 11:15 p.m., Sergeant Vincent and Officer Cardin were on patrol in the vicinity of Sixth and Jackson in San Jose. At that time, Sergeant Vincent noticed four individuals walk to a car, open the door and huddle around one particular individual who appeared to be bending over showing them something. One of the individuals observed the officers and appellant hurriedly shut the vehicle door and the "individual" started to walk away from the vehicle. All four started walking toward a bar on the southwest corner of Sixth and Jackson. Three of the group walked very fast while appellant walked slowly and deliberately behind them. The officers observed he was unsteady, had a slight stagger and could not keep up with the others. Officer Cardin yelled at appellant to stop. Appellant turned around and said, "Who, me?" Cardin said yes and approached him. Appellant was clutching his vest tightly with his right hand. He refused to release his hold on his vest and Cardin grabbed it and pulled it away to see if he had any weapons "or anything" there. There were no weapons. The officers asked appellant his name and he responded "Bennie." He was very slow in responding to questions, had an odor of alcohol about him and was still unsteady on his feet. He eventually gave his full name and address but had no identification. At this point a crowd began to gather at

the exit of the bar and the officers escorted defendant 20 feet away to the police vehicle to talk to him some more. They also called for a backup vehicle. Appellant told the officers he owned the car but had no registration. The officers asked appellant to perform some field sobriety tests which he did but not to their satisfaction. They concluded he was very intoxicated and unable to care for himself. Out of concern for his personal safety and the safety of others if he drove, Sergeant Vincent arrested him for being under the influence of alcohol in a public place. Because Sergeant Vincent's superiors, the police lieutenant and captain, are off on Saturday night, he had the final decision as to whether appellant would be jailed. Considering the detoxification center normally closed at 8 p.m. on Saturday nights, it was decided to place appellant in jail. Since it was normal procedure to strip search and inventory all prisoners at the jail, Officer Cardin conducted a full search of appellant before handcuffing him. He found methamphetamine in appellant's right front vest pocket and blue tablets in an opaque closed pillbox. Two marijuana cigarettes were later found at the police administration building.

## Discussion

Because we believe *People v. Longwill* (1975) 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753] is dispositive of this case we will take appellant's contentions out of order.

I. *There was probable cause to arrest appellant.*

We agree with the trial court's finding that the initial detention was valid and that there was sufficient evidence to give the officers probable cause to arrest appellant for violation of Penal Code section 647, subdivision (f).

II. *The full body search of appellant at the time of arrest violates the rule of People v. Longwill.*

Searches conducted without a warrant are per se unreasonable and violative of the Fourth Amendment subject only to a few specified and well-established exceptions. (*Mincey v. Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298-299, 98 S.Ct. 2408]; *People v. Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514].) One such exception, the warrantless search incident to a lawful arrest, allows for the search of an arrested person for instrumentalities used to commit the

crime, fruits and other evidence of the crime. (*People v. Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 812-813 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) At issue here is the reasonableness of the extent to which appellant was searched. Although, as respondent maintains, full body searches may be proper under federal constitutional law at the time of a custodial arrest, California constitutional standards do not automatically permit this. In *People v. Brisendine* (1975) 13 Cal.3d 528, 545 [119 Cal.Rptr. 315, 531 P.2d 1099] the court concluded that only a pat-search is allowable if the arrestee is to be cited for an offense to which there are no instrumentalities, fruits or other evidence of the crime and to which there are not particular facts justifying a further search for weapons. *People v. Longwill, supra*, 14 Cal.3d 943, 946, specifically applied this limitation to a public intoxication (alcohol not drugs) arrest. (See also *People v. Knutson* (1976) 60 Cal.App.3d 856, 865 [131 Cal.Rptr. 846].) Under such authority the full body search in the present case was unjustifiably broad and not supportable as a valid search incident to appellant's arrest.

However, just as in *People v. Longwill, supra*, 14 Cal.3d 943, respondent seeks to justify the search by another exception, i.e. the concept of the "accelerated booking search." In cases where a defendant is actually being booked a full body search is permissible to maintain jail security, to discover evidence of the crime and to safeguard the prisoner's belongings. (*People v. Maher* (1976) 17 Cal.3d 196, 200 [130 Cal.Rptr. 508, 550 P.2d 1044].) Courts have allowed such full body booking searches to be done in the field since it is not a significantly greater intrusion into the rights of the arrestee. (*People v. Barajas* (1978) 81 Cal.App.3d 999, 1009 [147 Cal.Rptr. 195].) The court in *People v. Longwill, supra*, 14 Cal.3d 943, approved the practice in dicta provided "in fact the individual is to be subjected to the booking process." (P. 948.) However, it rejected the accelerated booking search justification in relation to the arrest for violation of Penal Code section 647, subdivision (f) (alcohol) since it found that significant probability existed that any given public intoxication arrest may never reach actual incarceration. The court referred to a study of law enforcement practices which found that a high percentage of public intoxication arrestees are released either at the scene or at the station house prior to the booking process. (*People v. Longwill, supra*, at pp. 947-948.) Penal Code sections 849, subdivision (b)(2) and 853.6 specifically allow such alternative procedures. Penal Code section 853.6, subdivision (a) provides: "In any case in which a person is arrested for an offense declared to be a misdemeanor and does not demand to be taken before a magistrate, such person may, instead

of being taken before a magistrate, be released according to the procedures set forth by this chapter. If the arresting officer *or his or her superior* determines that the person should be released, such officer or superior shall prepare [a citation and notice to appear] .... If the person is not released prior to being booked and the *officer in charge of the booking or his or her superior* determines that the person should be released, such officer or superior shall prepare such written notice to appear in a court." (Italics added.) Accordingly, under Penal Code section 853.6 there are four separate officials—the arresting officer, his superior, the booking officer and his superior—who may intervene and divert the arrestee prior to actual incarceration. (*People* v. *Longwill, supra*, 14 Cal.3d at p. 947.)

Respondent maintains that the present case is distinguishable from *Longwill* since the evidence shows that appellant was actually going to be incarcerated. Sergeant Vincent testified that his superiors were off duty therefore his decision was controlling. There were no alternatives since the detoxification center was closed. Lieutenant Becker, the commander of the main jail and apparently in charge of booking testified that it was their policy to accept all Penal Code section 647, subdivision (f) cases. When asked if there were any practices with regard to releasing these types of cases independent of the arresting agency his answer was "Very seldom." Therefore, the People argue the "accelerated booking search" was valid.

The issue presented is whether a factual likelihood that an arrestee for public intoxication will not have a chance to be released because of local policies and practices is sufficient to allow the "accelerated booking search." We think not. As set forth above, the possibility of release without booking exists as a matter of law.

The Supreme Court foresaw in *Longwill* that unrestricted searches of all public intoxication arrestees would occur regardless of whether they were actually to be incarcerated. Should contraband be discovered such intrusions would "mysteriously ripen into 'accelerated booking searches.'" (*People* v. *Longwill, supra*, 14 Cal.3d at p. 948.) To prevent such a serious intrusion of privacy rights, the *Longwill* court forbade full body searches of individuals arrested for public intoxication *"until such time as they are actually to be incarcerated."* (P. 952; italics added.) We take this last phrase to mean at the station house or the detention facility immediately prior to incarceration.

To uphold such an in-field search on the factual probability of actual incarceration would invite police practices specifically tailored to avoid the rule in *Longwill.* Since this significant risk of intrusion is not counterbalanced by an equivalent police necessity it cannot be tolerated. Absent a reasonable and articulable suspicion that the suspect is armed, full body searches of public intoxication arrestees are allowed only at the time of actual booking and incarceration.

Accordingly, since the contraband was illegally seized in violation of article I, section 13 of the California Constitution, it was erroneously received into evidence. (*People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].)

III. *Appellant's contention that the accelerated booking search does not extend to closed containers.*

Because of our decision under section II of this opinion we need not discuss appellant's argument on this issue.

The judgment is reversed.

Rouse, Acting P. J., and Smith, J., concurred.

A petition for a rehearing was denied March 19, 1982, and respondent's petition for a hearing by the Supreme Court was denied April 15, 1982. Richardson, J., was of the opinion that the petition should be granted.