[Crim. No. 22259. Oct. 6, 1983.]

THE PEOPLE, Plaintiff and Appellant, v.
RAYMOND LAIWA III, Defendant and Respondent.

[black redaction block]

COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein and Edward P. O'Brien, Assistant Attorneys General, Herbert F. Wilkinson, John T. Murphy, Gloria F. DeHart, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Appellant.

John J. Meehan, District Attorney (Alameda), William M. Baldwin, Assistant District Attorney, and William McKinstry, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Appellant.

Sheldon Portman, Public Defender, Barbara B. Fargo, Rosemary S. Morrison and Jeffrey A. Kroeber, Deputy Public Defenders, for Defendant and Respondent.

Quin Denvir, State Public Defender, George L. Schraer and Ralph H. Goldsen, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Respondent.

OPINION

MOSK, J.—While on patrol at midday in July 1979, a police officer saw defendant in a parking lot making stiff, "robot-like" movements. From his training and experience the officer formed the opinion that defendant was under the influence of phencyclidine (PCP). He detained defendant and tested him for certain distinctive eye movements that are seen in persons under the influence of PCP. When the test proved positive, the officer arrested defendant, took from him a closed tote bag he had been carrying, and put him in handcuffs; he may also have placed defendant in the patrol car at that time.

The officer then opened and searched the tote bag; he subsequently testified that he did so "for inventory purposes." Inside the bag he found a

single cigarette containing PCP. After this discovery, defendant was transported to the police station, booked, and charged with the crime of possession of PCP. (Health & Saf. Code, § 11377, subd. (a).)

At the preliminary hearing the foregoing evidence was introduced and defendant stipulated that the officer had probable cause to arrest him for being under the influence of a narcotic. (Pen. Code, § 647, subd. (f).)[1] He moved, however, to suppress the evidence of the cigarette on the ground that the warrantless search of his tote bag was unlawful. (§ 1538.5, subd. (f).) He contended that the intrusion could not be justified as an incident to the narcotics arrest because at the time of the search the bag was no longer under his immediate control: it had been taken away from him and he was in handcuffs. The prosecution sought to justify the intrusion on a different theory, contending that it should be upheld as an "accelerated booking search." To support that theory with facts, the prosecution reopened its case over defendant's objection and recalled the arresting officer to the stand. He testified that it was his department's practice to book and "strip-search" all persons arrested on a charge of being under the influence of narcotics, and that before he looked inside defendant's bag he intended to book him on such a charge. On this testimony the magistrate found that defendant would in fact have been subjected to the booking and booking-search process, and therefore ruled that the search of the bag at the scene of the arrest was justified as an "accelerated booking search." The motion to suppress was denied, and defendant was held to answer.

In superior court defendant filed a compound motion to suppress the evidence (§ 1538.5, subd. (i)) and to "dismiss" the information pursuant to section 995 "on the ground that evidence necessary to support the Information was erroneously admitted over proper defense objection at the preliminary examination." No evidence was introduced at the hearing, which was devoted to arguing whether the case was controlled by *People v. Pace* (1979) 92 Cal.App.3d 199 [154 Cal.Rptr. 811], or by three decisions relied on by the People involving booking searches. The court took the matter under submission, and thereafter issued a memorandum of decision ruling that "the motion" was granted "for the reasons stated in *People v. Pace.*" The People took this appeal.

## I

We begin by addressing a procedural problem that has troubled our courts and practitioners since the enactment of the statutory motion to suppress (§ 1538.5) in 1967. Prior to that date a defendant had two methods of chal-

---

[1] All statutory references in this opinion are to the Penal Code, unless otherwise stated.

lenging before trial the admissibility of evidence obtained by a warrantless search and seizure: i.e., a nonstatutory motion to suppress (*People* v. *Gershenhorn* (1964) 225 Cal.App.2d 122, 124 [37 Cal.Rptr. 176]) and a statutory motion to set aside the accusatory pleading (§ 995) on the ground that it rested entirely on evidence obtained by an illegal search and seizure (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 271 [294 P.2d 23]). (See generally, Note, *Methods of Challenging Searches and Seizures in California* (1966) 54 Cal.L.Rev. 1070, 1071-1077; Cal. Criminal Law Practice (Cont.Ed.Bar 1964) pp. 190-196.) There were a number of significant differences between the two procedures, however, and one of those differences was in the opportunity for immediate review. Each party was accorded an immediate review of a ruling on a motion to set aside an accusatory pleading: the People could take a direct appeal (former § 1238, subd. 1; now § 1238, subd. (a)(1)), and the defendant could petition for a writ of prohibition (§ 999a). But there was no such review of a ruling on a motion to suppress: that ruling would support neither an appeal (*People* v. *Gershenhorn, supra,* 225 Cal.App.2d 122) nor a petition for writ (*People* v. *Justice Court* (1960) 185 Cal.App.2d 256 [8 Cal.Rptr. 176]). This omission tended to work a greater hardship on the People than on the defendant, as the latter had the right to obtain appellate review of the ruling after any ensuing conviction.

Section 1538.5 was enacted in part to remedy the omission. (See 22 Assem. Interim Com. Rep. (1965-1967) No. 12, Crim. Procedure, Search & Seizure, pp. 15-16.) It now provides multiple opportunities for immediate review by both parties of rulings on motions to suppress. In misdemeanor cases, either the People or the defendant can appeal to the superior court. (§ 1538.5, subd. (j).) In felony cases, the People can petition for writ if the prosecution has not been dismissed on motion of the superior court pursuant to section 1385[2] (§ 1538.5, subd. (o)), and can appeal if it has (§ 1238, subd. (a)(7)); the defendant can petition for writ (§ 1538.5, subd. (i)). (See generally Cal. Search and Seizure Practice (Cont.Ed.Bar 2d ed. 1977) pp. 59-88.)

The difficulty we address here stems from the fact that when the Legislature codified, expanded, and regulated the motion to suppress evidence on the ground of unreasonable search and seizure in the elaborate provisions of section 1538.5, it left intact the motion to set aside the accusatory pleading on the same ground under section 995. That this was not an oversight is shown by section 1538.5 itself, which declares that "Nothing in this

---

[2]"The judge or magistrate may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

section shall be construed as altering . . . the procedure and law relating to a motion made pursuant to Section . . . 995" (*id.*, subd. (n)), and expressly includes section 995 in a list of "the sole and exclusive remedies prior to conviction to test the unreasonableness of a search or seizure" (*id.*, subd. (m)). The oversight, rather, appears in the failure of the Legislature to *coordinate* the two procedures in light of the significant differences remaining between them.

The principal differences lie in the functions of the courts when ruling on these motions, and in the scope of appellate review. Section 1538.5, of course, repeatedly refers to superior court proceedings on a motion to suppress as a hearing "de novo." (*Id.*, subds. (i) and (j).) ■ Accordingly, it is settled that in ruling on a motion under section 1538.5 the superior court sits as a finder of fact with the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences, and hence that on review of its ruling by appeal or writ all presumptions are drawn in favor of the factual determinations of the superior court and the appellate court must uphold the superior court's express or implied findings if they are supported by substantial evidence. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 21].) ■ By contrast, in proceedings under section 995 it is the magistrate who is the finder of fact; the superior court has none of the foregoing powers, and sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. (*People* v. *Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664], and cases cited.) On review by appeal or writ, moreover, the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer. (*People* v. *Maltz* (1971) 14 Cal.App.3d 381, 389 [92 Cal.Rptr. 216]; see generally *People* v. *Sanchez* (1972) 24 Cal.App.3d 664, 690, fn. 15 [101 Cal.Rptr. 193].)

These differences cause no mischief when the defendant makes only one of the two motions at a time: following the foregoing rules, both the superior court and the appellate court know what to do. (See, e.g., *People* v. *Norman* (1975) 14 Cal.3d 929, 931, 939 [123 Cal.Rptr. 109, 538 P.2d 237] [§ 1538.5 motion at preliminary examination; § 995 motion after filing of information; People's appeal from order setting aside information].) The problems arise when, as here, the defendant makes a compound motion invoking both statutes at once. If, as often occurs, that motion is heard by stipulation in whole or in part on the transcript of the preliminary examination, the superior court may be called on to perform the mental gymnastics of viewing one and the same testimony both as a trier of fact under section 1538.5 and as a reviewing court under section 995. Because of the

court's sharply different powers in exercising these two functions, it may be compelled to rule the identical search good under one branch of the motion and bad under the other. (See, e.g., *People* v. *Cagle* (1971) 21 Cal.App.3d 57, 60 [98 Cal.Rptr. 348] [motion to set aside information denied; simultaneous motion to suppress evidence granted].) The court may seek to avoid this anomaly by treating the defendant's compound effort as two successive motions: it may, for example, suppress the evidence under section 1538.5 because it was obtained by illegal search and seizure, and then conclude that when such evidence is disregarded there is no probable cause to support the commitment within the meaning of section 995. But this technique could be proper only if the superior court had also concluded, *sitting as a reviewing court under section 995,* that the magistrate erred in ruling that the evidence was not illegally obtained. (Cf. *People* v. *Superior Court (Kusano)* (1969) 276 Cal.App.2d 581, 586, fn. 4 [81 Cal.Rptr. 42] (dictum).) Further, this device may cause the court new problems, as it runs counter to an appellate opinion declaring that when the superior court suppresses evidence under section 1538.5 it lacks jurisdiction to set aside the information under section 995 immediately thereafter. (*People* v. *Superior Court (MacLachlin)* (1969) 271 Cal.App.2d 338, 346-348 [76 Cal.Rptr. 712].)

Review of an order ruling on such a compound motion presents other complications. As noted above, insofar as the order is made under section 1538.5 the appellate court reviews the ruling of the superior court, but insofar as it is made under section 995 the appellate court must disregard that ruling and review instead the action of the magistrate. This feat will be demanding enough when the superior court clearly explains for the record how it is deciding each branch of the motion. But in many cases, as here, neither the parties nor the superior court exhibit any awareness of the differences between the two procedures, and the court merely announces that it grants "the motion." Such a ruling leaves the appellate court to speculate on which standard to apply to what evidence, and causes the "consternation that results from the making of simultaneous, undifferentiated orders suppressing evidence and setting aside an information" (*People* v. *Minervini* (1971) 20 Cal.App.3d 832, 836 [98 Cal.Rptr. 107]).

The parties also face obstacles in obtaining review of such an order. If the order *denies* the motion the defendant may seek immediate relief by writ, but for a full review of the ruling he will be compelled to file either two separate writ petitions or a compound petition for two writs—one to review the order insofar as it denies the section 995 portion of the motion (§ 999a) and another to review it insofar as it denies the section 1538.5

portion (§ 1538.5, subd. (i))[3]—and the appellate court will be potentially burdened with duplicate considerations of the same issue.

If the order *grants* the motion, the problems are still more complex. As pointed out earlier, insofar as the order grants the section 995 portion of the motion the People's remedy is by appeal from the order setting aside the information (§ 1238, subd. (a)(1)); but insofar as the order grants the section 1538.5 portion of the motion their remedy is by petition for writ (§ 1538.5, subd. (o)), unless the court dismisses the prosecution on its own motion pursuant to section 1385 before the writ is sought, in which event their sole remedy is by appeal from that dismissal (*id.,* subd. (j); § 1238, subd. (a)(7)). Neither combination of these remedies, however, is free of serious theoretical objections. Thus if the superior court dismisses the entire prosecution under section 1385, it is difficult to see how the court can simultaneously set aside the information in the same case under section 995. Surely the greater includes the lesser; and even if the remedies were of equal scope, a case cannot be dismissed twice. Conversely, it is no less difficult to see how an application for a writ can be entertained in a case in which the prosecution has been aborted by an order setting aside the information. In that event the appellate court's alternate writ—commanding the superior court to grant the relief requested or show cause why not—will demand a theoretical impossibility of the superior court, which will have terminated the prosecution and lost jurisdiction pending the People's appeal from its order under section 995.[4]

For these and other reasons, the appellate courts have often experienced difficulty in dealing with cases in which the People simultaneously petition for a writ under section 1538.5 and file an appeal from the section 995 portion of the same ruling. The situation is not much better when, as here, the People forego their statutory right to seek a writ and simply take an appeal. In that event a number of appellate courts have attempted to justify a full review of the ruling by the device of treating the appeal as being taken simultaneously from (1) an order setting aside the information under section

---

[3]The cited provisions contain a trap for the unwary defendant: a petition for writ review of the section 1538.5 ruling may be filed within 30 days, but such review of the section 995 ruling must be sought within 15 days. Thus a petition that is timely as to the former may be too late to review the latter.

[4]One Court of Appeal has gone even further, reasoning that "even if the appellate court entertains the petition and orders issuance of the writ directing the superior court to vacate its order suppressing the evidence and make a different order denying defendant's motion to dismiss, the People have gained an empty victory for the order cannot be executed because there is no case pending before the superior court the same previously having been dismissed by it on defendant's motion under section 995, Penal Code; . . ." (*People* v. *Superior Court (MacLachlin)* (1969) *supra,* 271 Cal.App.2d 338, 345; accord, *People* v. *Gephart* (1979) 93 Cal.App.3d 989, 996, fn. 3 [156 Cal.Rptr. 489] (dictum).)

995 and (2) an order dismissing the prosecution under section 1385 (*People v. Minervini* (1971) *supra,* 20 Cal.App.3d 832, 836; *People v. Gephart* (1979) *supra,* 93 Cal.App.3d 989, 996, fn. 3 (dictum)), or by treating an appeal from the former as if it were an appeal from the latter (*People v. Amaya* (1979) 93 Cal.App.3d 424, 427, fn. 1 [155 Cal.Rptr. 783]). ██ But the fiction of "treating" the appeal as having stemmed from a nonexistent dismissal under section 1385 does violence to the express requirement of the latter statute that "The reasons of the dismissal must be set forth in an order entered upon the minutes." Compliance with that requirement is mandatory. (*People v. Hunt* (1977) 19 Cal.3d 888, 897 [140 Cal.Rptr. 651, 568 P.2d 376].) "If the reasons are not set forth in the minutes, the order dismissing may not be considered [or 'treated as'] a dismissal under section 1385." (*People v. Superior Court (Howard)* (1968) 69 Cal.2d 491, 503, fn. 7 [72 Cal.Rptr. 330, 446 P.2d 138].)

In addition, in all cases in which the court acts at the instance of the defendant or the prosecutor, this device also does violence to the statute granting the People a limited right of appeal from such a dismissal. Although under section 1385 a court may ordinarily dismiss either on its own motion or on motion of the prosecutor (fn. 2, *ante*), subdivision (a)(7) of section 1238 allows an appeal by the latter only when the dismissal was "made upon motion of the court." ██ Compliance with this limitation is also mandatory: an appeal by the People from a dismissal under section 1385 based on an order suppressing evidence cannot be maintained when the dismissal was granted on motion of the prosecutor, and hence "care should be taken in each instance to specify in the minute order whether the dismissal is on the court's motion or on application of the prosecuting attorney." (*People v. Caserta* (1971) 14 Cal.App.3d 484, 486-488 [92 Cal.Rptr. 382].)

Finally, the Courts of Appeal have sought to forestall the foregoing problems by urging superior courts not to act on these compound motions in the first place. Instead, the courts have been advised to rule only on the section 1538.5 portion of the motion, and if they grant that portion, to postpone ruling on the section 995 portion until after the People have exhausted or waived their right to writ review of the suppression order. (*People v. Minervini, supra,* at p. 836 of 20 Cal.App.3d.) If a court does wish to dismiss the prosecution on its own motion contemporaneously with the suppression order, it is told to take that action under section 1385 rather than section 995, thus permitting the People an orderly review by appeal. (*Ibid.*)

Although this technique represents an advance over a simultaneous ruling on the compound motion, it too is not without apparent flaws. It in effect denies the defendant his right, inferrable from subdivisions (m) and (n) of

section 1538.5, to a prompt determination of the section 995 motion he has joined with his motion to suppress. His purpose in joining that motion is to reap full benefit from his motion to suppress, if it is successful, in the usual case in which insufficient evidence remains to put him to trial. If he does not add a motion under section 995 the prosecution will continue to hang over him while the People pursue their statutory remedy of review by writ.[5] Nor can he simply move to dismiss under section 1385 when the suppression order is granted, because under present legislation that motion cannot be made by a defendant in any circumstances.[6] It is to avoid these obstacles that the defendant presents his section 995 motion at the same time as his motion to suppress. The *Minervini* proposal frustrates that purpose.

More than a decade ago, an appellate court pointed out "the crying need for legislative reform" of the overlapping statutory procedures for pretrial challenge of a search and seizure. (*People* v. *Sanchez* (1972) *supra,* 24 Cal.App.3d 664, 690, fn. 15.) For all the reasons stated above, we support the call for such reform. Because legislative reconsideration has not been forthcoming, this often litigated area of our criminal law remains unsatisfactory both in principle and in practice.

In the meantime, some improvements may be adopted on the basis of existing statutes and the common law. ■ Thus we urge that when a superior court has granted the section 1538.5 portion of a compound motion, it should first consider whether to exercise its power to dismiss the prosecution on its own motion pursuant to section 1385.[7] This is the preferred remedy, as it gives the defendant immediate relief and the People immediate review. (§ 1238, subd. (a)(7).)

If the court determines not to so dismiss, it should at least consider deferring ruling on the section 995 portion of the motion until the People have exhausted or waived their right to writ review of the suppression order. In

[5]To be sure, the defendant will still be entitled to make a section 995 motion if the suppression order survives the People's challenge, but at that time he may be barred by statute from seeking writ review of his own if his motion is denied. (§ 1510.)

[6]It is true we have recognized in dictum that a defendant might "informally suggest" to the court that it consider dismissing the prosecution on its own motion. (*People* v. *Brooks* (1980) 26 Cal.3d 471, 475, fn. 2 [162 Cal.Rptr. 177, 605 P.2d 1306].) To use such a gambit in every case of this type, however, could prove a dangerous game: if the defendant's "suggestion" is deemed to be in effect a motion, the People could appeal from the ensuing dismissal (§ 1238, subd. (a)(8)) and might obtain a reversal on this ground alone. (But see *People* v. *Benson* (1976) 64 Cal.App.3d Supp. 10, 12-13 [134 Cal.Rptr. 766].)

[7]As noted in *People* v. *Superior Court (Kusano)* (1979) *supra,* 276 Cal.App.2d 581, 585, footnote 3, "Since the superior court, in dismissing under section 1385, does so on motion (albeit its own motion), the People are afforded an opportunity to show that they have other evidence, not produced at the preliminary examination (or before the grand jury), which would justify a trial although some evidence adverse to defendant had been suppressed."

appropriate cases the disadvantages to the defendant of the *Minervini* proposal may be reduced by pretrial release procedures. (See § 1538.5, subd. (k).)

If the court determines not to so defer its ruling it may decide the section 995 portion of the motion simultaneously with the suppression portion, provided it scrupulously distinguishes between its different functions on each motion. We disagree with the conclusion of *People* v. *Superior Court* (*Mac Lachlin*) (1969) *supra,* 271 Cal.App.2d 338, 346-348, that the stay language of subdivision (*l*) of section 1538.5 impliedly deprives the court of jurisdiction to rule on the section 995 portion of the motion immediately upon granting the suppression motion. The language in question is plain and unambiguous: it provides simply that when a suppression motion is granted "the *trial* of a criminal case shall be stayed" pending various statutory review procedures. (Italics added.) It is improper to rewrite such plain language to include a *pretrial* motion to set aside the information. ■ "When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) ■ To the extent it so construes section 1538.5, *Mac Lachlin* is disapproved.

■ The same rule, however, does not bar us from construing a different—and much less clear—portion of the statute that appears to offer a solution to the theoretical objections discussed earlier. Subdivision (j) of section 1538.5 provides in relevant part that if the suppression motion is granted "the people may seek appellate review as provided in subdivision (o) [i.e., by petition for writ], unless the court prior to the time such review is sought has dismissed the case pursuant to Section 1385." Applying the familiar maxim *expressio unius est exclusio alterius* (*Southern Cal. Gas Co.* v. *Public Utilities Com.* (1979) 24 Cal.3d 653, 659 [156 Cal.Rptr. 733, 596 P.2d 1149]; *People* v. *Nichols* (1970) 3 Cal.3d 150, 161 [89 Cal.Rptr. 721, 474 P.2d 673]), we may fairly infer that when the court has *not* dismissed the case pursuant to section 1385 the People may seek writ review even though the prosecution has been terminated for another reason, i.e., because the information has been set aside under section 995.

Such a writ proceeding will provide the People with appellate review of the section 1538.5 portion of the ruling. But the section 995 portion must be reviewable at the same time, as a peremptory writ cannot be executed so long as the information remains set aside. The order setting aside the information, of course, is appealable by the People. (§ 1238, subd. (a)(1).) Because the People have that right—and no question of double jeopardy is involved—no bar appears to allowing the People instead to seek review of

the same order by means of a writ. (Compare *People* v. *Superior Court (Howard)* (1968) *supra,* 69 Cal.2d 491 [People held not entitled to writ review of order dismissing prosecution under § 1385 because People had no right to appeal from that order and jeopardy had attached].) The need for coordinated and concurrent review and disposition of both portions of the court's ruling on the compound motion renders a separate appeal from only the section 995 portion an inadequate remedy at law, so that mandate or prohibition will lie to review that portion as well. (Code Civ. Proc., §§ 1086, 1103.)

■ We conclude that when a superior court simultaneously grants both the section 1538.5 and the section 995 portions of a compound motion challenging the legality of the same search and seizure, the People may seek immediate review of both rulings by means of a single petition for writ of mandate or prohibition.

In the case at bar, however, a simpler remedy is available because of the state of the record and the limited issue it presents. As noted at the outset, no testimony whatever was offered at the superior court hearing, nor did the parties introduce in lieu thereof the evidence taken at the preliminary examination. The court apparently accepted the facts as found by the magistrate; the entire hearing was dedicated to debating questions of precedent; and the ruling was based exclusively on the court's interpretation of the relevant law. In these circumstances we deem that the court in effect ruled only on the section 995 portion of defendant's compound motion (see *People* v. *Superior Court (Kusano)* (1969) *supra,* 276 Cal.App.2d 581, 585), holding the challenged evidence inadmissible as a matter of law and setting aside the information because the remaining evidence was legally insufficient to amount to probable cause. For the same reason we deem that the People's appeal from "the order granting defendant's motion herein and dismissing the instant cause" constitutes simply an appeal pursuant to section 1238, subdivision (a)(1), from an order setting aside the information.

II

As noted at the outset, the arresting officer testified he searched defendant's tote bag "for inventory purposes." The only justification for that search presented by the prosecution at the preliminary hearing was that the intrusion constituted a so-called "accelerated booking search." The magistrate accepted this justification and made it the ground of his ruling denying the motion to suppress. Finally, the sole contention raised in the Attorney General's brief on appeal is likewise that the search of the bag was justifiable as an "accelerated booking search." We therefore limit our

consideration to that issue. (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 640-641 [108 Cal.Rptr. 585, 511 P.2d 33], and cases cited.)

■ It is axiomatic, of course, that warrantless searches are per se unreasonable under the California and federal Constitutions with only a few carefully circumscribed exceptions, and that the People have the burden of proving that any search without a warrant comes within one of those exceptions. (*People* v. *Dalton* (1979) 24 Cal.3d 850, 855 [157 Cal.Rptr. 497, 598 P.2d 467], and cases cited.) A "booking search" has been recognized as such an exception. (*People* v. *Ross* (1967) 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606], revd. on other grounds *sub nom. Ross* v. *California* (1968) 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850]; see generally 2 LaFave, Search and Seizure (1978) § 5.3 (a).) The question at hand is whether another exception should be recognized for an "accelerated booking search."

The Attorney General relies primarily on *People* v. *Bullwinkle* (1980) 105 Cal.App.3d 82, 86-90 [164 Cal.Rptr. 163].[8] In *Bullwinkle* a Court of Appeal upheld a warrantless search of an arrestee's purse conducted prior to booking. The court stressed that because the suspect had been arrested on a felony warrant, she would inevitably have been jailed in any event, and her purse would have been searched at that time as part of the booking process. The court then reasoned that "Where it is shown that a suspect would have been jailed and thus subject to a booking search, the fact that a thorough search of the booking type occurs prior to the actual booking process does not render the search illegal, since no additional or greater intrusion on the privacy of the suspect is involved." (*Id.* at p. 87.) The court further stated that such a search may be upheld on appeal as an "accelerated booking search" even when the arresting officer expressly concedes in his testimony that he was *not* conducting a booking search at the time of the intrusion; the court reiterated, "The theory is that the privacy of the prisoner and her effects would have been invaded anyway, and that therefore no greater intrusion on that privacy occurs when the search is conducted other than during the booking process." (*Id.* at p. 90.)

■ After careful consideration we cannot accept this theory as justification for a warrantless search. To begin with, we are unpersuaded by the claim that an "accelerated booking search" causes "no additional or greater intrusion" into the privacy of an arrestee than a jailhouse search at the time of the booking process. The latter can be very thorough indeed; for exam-

---

[8]A few earlier cases approved of "accelerated booking searches" without significant discussion. (*People* v. *Flores* (1979) 100 Cal.App.3d 221, 229-230 [160 Cal.Rptr. 839]; *People* v. *Brown* (1979) 88 Cal.App.3d 283, 293 [151 Cal.Rptr. 749]; *People* v. *Barajas* (1978) 81 Cal.App.3d 999, 1008-1009 [147 Cal.Rptr. 195].)

ple, in the case at bar the arresting officer testified it was his department's practice to "strip-search" all persons booked for being under the influence of a narcotic. When as often occurs the arrest takes place on the street or in some other public setting, it is plainly wrong to say that "a thorough search of the booking type" performed at that location is not a greater invasion of personal privacy than the same search held in the relatively sequestered milieu of the property room of a police station. The United States Supreme Court has explained how great an intrusion is an ordinary "patdown" on the street: "it is simply fantastic to urge that such a procedure performed in public by a policeman while a citizen stands helpless, perhaps facing a wall with his hands raised, is a 'petty indignity.' It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." (Fns. omitted.) (*Terry* v. *Ohio* (1968) 392 U.S. 1, 16-17 [20 L.Ed.2d 889, 903, 88 S.Ct. 1868].) If this is true of the most limited and superficial frisk known to the law, it is a fortiori true of the general full-body search permitted at booking. Yet if the "accelerated booking search" exception were adopted, all such searches could be conducted whenever and wherever the arrest happens to take place.

Next, the justifications for a true booking search are inapplicable to a search in the field at the time of arrest. Although those justifications have been variously stated in our decisions (see, e.g., *People* v. *Maher* (1976) 17 Cal.3d 196, 200-201 [130 Cal.Rptr. 508, 550 P.2d 1044], and cases cited) they properly fall into two broad categories—inventory and jail safety. First, in California several statutes impose on jail officials the duty to take charge of, give receipts for, keep safely, and account for the personal property of all persons delivered into their custody. (§§ 1412, 4003; Gov. Code, § 26640.) Each of these purposes is served by a search of the prisoner at the time he is booked. Secondly, by virtue of their office jailers have the general responsibility to prevent escapes, safeguard both staff and inmates, and protect jail property; to discharge that responsibility they have the corresponding right to prevent the introduction into jail of anything that could be used to attempt an escape or harm persons or property, such as weapons or contraband. Again, a booking search promotes these several goals.

A search at the time and place of the arrest, however, cannot be justified as necessary or even appropriate to serve any of the foregoing purposes. It is evident that the need to inventory a prisoner's property is satisfied poorly, if at all, by allowing the arresting officers to rifle through his possessions at the scene of the crime, where they are unlikely to have the time or incentive to meticulously catalog everything they find, or the means of furnishing him with formal receipts, or facilities such as property bags and storage lockers for safeguarding each of his effects. There will be ample

opportunity for the proper officials to discharge these duties when the arresting officers deliver the prisoner into their custody.

Nor is there any need for the arresting officers to concern themselves about searching the suspect in order to discover items such as weapons or contraband that should be kept out of jail, for the obvious reason that he is not about to be put in jail; he is simply being taken into their temporary custody for transportation to the police station or place of eventual incarceration. Existing law, moreover, fully permits the officers to protect themselves from any danger while the defendant is in their custody. ■ As an incident to the arrest they may conduct a limited search "(1) for instrumentalities used to commit the crime, the fruits of that crime, and other evidence thereof which will aid in the apprehension or conviction of the criminal; (2) for articles the possession of which is itself unlawful, such as contraband or goods known to be stolen; and (3) for weapons which can be used to assault the arresting officer or to effect an escape." (*People* v. *Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 812-813 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) ■ Indeed, even when the charge will be resolved by a mere citation a patdown search for weapons is permissible if the officers are required to travel in proximity with the arrestee. (*People* v. *Brisendine* (1975) 13 Cal.3d 528, 537 [119 Cal.Rptr. 315, 531 P.2d 1099].)

■ In short, just as the legitimate purposes of the booking search exception do not justify a belated search conducted after the booking process has ended (*People* v. *Smith* (1980) 103 Cal.App.3d 840, 845 [163 Cal.Rptr. 322]), so also they do not justify a premature search performed before that process has begun.

Finally, we cannot blind ourselves to the practical dangers inherent in the "accelerated booking search" theory. Both of the above-mentioned intrusions permissible at the time of a lawful arrest—a search incident to the arrest and a patdown in the event of transportation—are restricted in their scope and tailored to their particular justifications. By contrast, as noted above an "accelerated booking search" would have no such restrictions.[9] If such an exception were recognized, police officers would have a license to conduct an immediate "thorough search of the booking type" of the person and effects of any individual they arrest without a warrant for a minor but bookable offense, in the hope of discovering evidence of a more serious crime; if such evidence were found, the suspect would then be

---

[9]Because this case does not involve a true booking search, we have no occasion to determine the ultimate limits of such a search. (See, e.g., *Reeves* v. *State* (Alaska 1979) 599 P.2d 727, 735-738; *State* v. *Kaluna* (Hawaii 1974) 520 P.2d 51, 60-62.)

booked instead on the latter charge and the intrusion would be rationalized after the fact as an "accelerated booking search." A comparison between the initial arrest and the ultimate charge in the case at bar illustrates the point. As recently said in a related context, "Since this significant risk of intrusion is not counterbalanced by an equivalent police necessity it cannot be tolerated." (*People* v. *Mosqueda* (1982) 128 Cal.App.3d 918, 924 [180 Cal.Rptr. 591].)

For all the foregoing reasons we hold that the so-called "accelerated booking search" is not a permissible exception to the warrant requirement of article I, section 13, of the California Constitution. We therefore disapprove *People* v. *Bullwinkle* (1980) *supra,* 105 Cal.App.3d 82, 86-90, and a dictum in *People* v. *Longwill* (1975) 14 Cal.3d 943, 948 [123 Cal.Rptr. 297, 538 P.2d 753].[10]

We conclude that the magistrate erred in denying defendant's motion to suppress the cigarette that he is charged with possessing. Because there is no other competent evidence to hold him to answer, the superior court correctly ruled that defendant was committed without probable cause.

The order appealed from is affirmed.

Bird, C. J., Broussard, J., and Reynoso, J., concurred.

**RICHARDSON, J.**—I respectfully dissent.

The majority purports to "limit [its] consideration" (*ante,* pp. 724-725) of the issues in this case to the single question whether the officer's search of defendant's tote bag was an "accelerated booking search," because this point supposedly was the only one raised in the Attorney General's opening brief on appeal. I find it unnecessary to reach the "accelerated booking search" issue because the search clearly was a proper search incident to defendant's valid arrest. (*New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860].) Contrary to the majority's suggestion, the record demonstrates beyond question that the People raised and relied on the "search incident to arrest" theory from the outset in this case.

Thus, following the preliminary examination, and during oral argument regarding defendant's motion to suppress, the parties focused upon the only

---

[10]"The People . . . seek to justify the instant search as a form of 'accelerated booking search.' The reasoning proceeds from the premise that a full custody search is permissible at the stationhouse prior to booking, and therefore it is not a significantly greater intrusion into the sanctity of the person of the arrestee if the search is conducted in the field. We have no quarrel with this rationale if in fact the individual is to be subjected to the booking process."

*two* possible theories supporting the search, namely, that it was either an accelerated booking search (citing *People* v. *Bullwinkle* (1980) 105 Cal.App.3d 82 [164 Cal.Rptr. 163]), or a search incident to arrest (citing *People* v. *Pace* (1979) 92 Cal.App.3d 199 [154 Cal.Rptr. 811]). Indeed, in its brief to the superior court, the People stated that "The only issue before this Court is whether the search of defendant's 'handbag' . . . *incident to his arrest* for a violation of Penal Code 647(f) was lawful. The People respectfully submit that it was." (Italics added.)

The fact that the Attorney General emphasized the "accelerated booking search" theory in his Court of Appeal brief is hardly surprising. The United States Supreme Court had not yet decided *Belton,* and pre-*Belton* decisions (including *Pace, supra*) regarding searches incident to arrest seemed adverse to the People's position. Once *Belton* was decided, however, the Attorney General called our attention to that case in a supplemental brief.

Moreover, analytically, an "accelerated booking search" is merely one form of a search incident to arrest, rather than an entirely different variety of search as the majority suggests. By relying upon the former theory, the Attorney General was arguing, in effect, that the search herein was a valid search incident to an arrest which contemplated eventual booking. In making such an argument, surely the Attorney General cannot reasonably be held to have waived his right to rely upon any subsequent controlling cases (such as *Belton*) which upheld searches incident to arrest *whether or not booking was contemplated.*

Thus, the majority seriously errs in declining to examine whether the search at issue was proper under *Belton,* to which question I now turn.

In *Belton,* an officer stopped a vehicle for speeding; after discovering evidence of marijuana use, he arrested the four men in the car for possession of marijuana. A search of an envelope found on the floor of the car and marked "supergold" revealed marijuana, and the officer proceeded to search the persons of the arrestees and the entire passenger compartment. He discovered cocaine in a zippered pocket of Belton's jacket which was found lying on the back seat.

The *Belton* court noted at the outset that the Fourth Amendment's protection against unreasonable searches and seizures can be realized in practical effect only if the courts fulfill their obligation to guide the conduct of police by developing "straightforward rule[s], easily applied, and predictably enforced." (453 U.S. at p. 459 [69 L.Ed.2d at p. 774].) After adopting the factual assumption that items within the interior of automobiles generally are within the reach of its occupants, the court proceeded to hold that the

search was valid because "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. [¶] It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. [Citation.] Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." (*Id.,* at pp. 460-461 [69 L.Ed.2d at p. 775], fns. omitted.)

In an important footnote, the court squarely rejected the argument that the jacket search was invalid because it was conducted after the officer had assumed exclusive control of the jacket, stating simply that "under this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his 'exclusive control.'" (*Id.,* at p. 462, fn. 5 [69 L.Ed.2d at p. 776].)

It will readily be seen that the facts of the case at bar clearly invite application of the principles of *Belton*: Laiwa's stuffbag was plainly within the area of Laiwa's immediate control at the time of its seizure. As in *Belton,* the searching officers reasonably could have suspected that the bag held contraband. Hence, the reasoning of *Belton* would allow it to be searched without a warrant. If confirmation of this reasoning is necessary, it is clearly provided by the following dictum from the high court's even more recent holding in *United States* v. *Ross* (1982) 456 U.S. 798, 823 [72 L.Ed.2d 572, 592, 102 S.Ct. 2157]: "A container carried at the time of arrest often may be searched without a warrant and even without any specific suspicion concerning its contents."

On the record before us, it cannot be determined with any certainty whether or not defendant actually had access to the *interior* of the stuffbag at the time the search was conducted, because he made no attempt to gain such access. He was handcuffed, and he may even have been sitting in the back seat of the patrol car at the time the search occurred. Nevertheless, the search should be upheld. Laiwa was arrested for the crime of being under the influence of PCP in a public place; the commission of that crime is commonly accompanied by evidence in the form of the drug itself on a defendant's person or in his immediate vicinity. Therefore, the arresting officers had the authority to conduct a reasonably intensive search of both the arrestee's person and all items found within the area of his immediate

control in order to disclose any weapons or evidence which might be located in that area. Such a result represents a sensible accommodation between privacy interests and the needs of legitimate law enforcement activities. The Fourth Amendment requires only that searches be "reasonable" in scope. By any rational definition of the term, the present search was reasonable.

I would reverse the order granting defendant's motion to suppress.

KAUS, J.—I respectfully dissent.

In conducting the "accelerated booking search" in this case, the police officer acted in conformity with a consistent line of California decisions which have explicitly approved such a practice in cases in which the People can show that the arrested person would have been subjected to the booking process in any event. (See *People* v. *Bullwinkle* (1980) 105 Cal.App.3d 82, 86-88 [164 Cal.Rptr. 163]; *People* v. *Flores* (1979) 100 Cal.App.3d 221, 229, 230 [160 Cal.Rptr. 839]; *People* v. *Brown* (1979) 88 Cal.App.3d 283, 293 [151 Cal.Rptr. 749]; *People* v. *Barajas* (1978) 81 Cal.App.3d 999, 1008-1009 [147 Cal.Rptr. 195].) Until today, this court has never cast doubt on the propriety of such a procedure; on the contrary, nearly a decade ago, we expressly declared, albeit in dictum, that "[*w*]*e have no quarrel* with [the accelerated booking] rationale if in fact the individual is to be subjected to the booking process." (*People* v. *Longwill* (1975) 14 Cal.3d 943, 948 [123 Cal.Rptr. 297, 538 P.2d 753].) Since the factual pattern leading to an accelerated booking search arises in virtually every felony arrest, I would venture to guess that there have been thousands of such searches carried out in reliance on the previously unquestioned rulings on this point.[1] Thus, even if I agreed with the majority that this line of decisions should now be disapproved, I would think that normal principles of retroactivity/prospectivity as applied in the search and seizure area would dictate that any change in the law be prospective. (See, e.g., *In re Joe R.* (1980) 27 Cal.3d 496, 511-512 [165 Cal.Rptr. 837, 612 P.2d 927]; *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 10 [136 Cal.Rptr. 409, 559 P.2d 1028].)

My disagreement with the majority goes further, however, for I see no reason to disapprove the established "accelerated booking search" rule. Despite the majority's parade of horribles, neither this case nor any of the previous accelerated booking search cases suggests that the California citi-

---

[1]Many of these searches, of course, might also be justified under the traditional application of the search-incident-to-arrest rule, but if—as is often the case—an in-the-field search of a tote bag, purse, attache case, or the like, is conducted after the arrestee is in handcuffs or in the back seat of a police car, an officer may well candidly admit that the search was undertaken as an on-the-scene "inventory" or "accelerated booking" search rather than to prevent the immediate destruction of evidence or to protect the officer's safety.

zenry is in danger of being subjected to on-the-street "strip searches"; surely we can deal with *that* problem if it ever arises. Similarly, I am not persuaded that in order to guard against the risk that in some cases police officers may falsely testify as to their presearch intent with respect to booking, we should adopt a broad prophylactic rule which invalidates *all* accelerated booking searches, even in instances where a suspect is arrested for a serious felony for which he would surely have been booked. I have no reason to believe that the risk of police perjury is any greater in this area than in any other.

In my view, the accelerated booking search rule can properly be seen as simply a limited and reasonable application of the "inevitable discovery" doctrine. (See generally *People* v. *Superior Court (Tunch)* (1978) 80 Cal.App.3d 665, 671-682 [145 Cal.Rptr. 795].) As the Court of Appeal explained in *People* v. *Bullwinkle, supra,* 105 Cal.App.3d at page 87: "Where it is shown that a suspect would have been jailed and thus subject to a booking search, the fact that a thorough search of the booking type occurs prior to the actual booking process does not render the search illegal, *since no additional or greater intrusion on the privacy of the suspect is involved.*" (Italics added.) This is not an instance in which the "inevitable discovery" rationale threatens any value protected by the warrant requirement (see 3 La Fave, Search and Seizure (1978) § 11.4(a), pp. 623-624); the stationhouse booking search, which would inevitably turn up the same evidence found in the on-the-scene search, is, of course, routinely conducted without a warrant. Under these circumstances, the exclusion of evidence which the police would invariably have discovered a few minutes later in the course of the booking process serves no constitutionally significant purpose.

Accordingly, I conclude that the evidence was properly obtained and would reverse the order setting aside the information.

Richardson, J., concurred.

Appellant's petition for a rehearing was denied December 1, 1983. Richardson, J., and Kaus, J., were of the opinion that the petition should be granted.