[Crim. No. 31981. Second Dist., Div. Two. July 26, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
MICHAEL FREDERICK SCHMIDT et al.,
Defendants and Respondents.

**COUNSEL**

C. Stanley Trom, District Attorney, and Richard N. W. Lambert, Deputy District Attorney, for Plaintiff and Appellant.

Kosmos & Walsh and Henry J. Walsh for Defendants and Respondents.

**OPINION**

**FLEMING, J.**—The People appeal the trial court's dismissal of charges of unlawful possession of cannabis in the form of hashish (Health & Saf. Code, § 11357, subd. (a)), possession of marijuana for the purpose of sale (Health & Saf. Code, § 11359), and unlawful possession of a "black box"—a device to avoid telephone toll charges (Pen. Code, § 502.7, subd. (b)(1)). The People assert the trial court erred when it held a search warrant defective and suppressed evidence of items seized pursuant to the warrant at defendants' residence.

FACTS

On 14 February 1977 Detective Jamie C. Skeeter of the Oxnard Police Department sought a warrant to search defendants' residence at 2035 Napoleon Avenue, Oxnard. In support of the warrant Skeeter prepared and signed an affidavit[1] which stated: at 11 a.m. February 14 a

---

[1]The relevant portions of the affidavit state:

"On 14 Febuary '77, at approximately 1100 hrs., your affiant was contacted by a confidential reliable informant who stated he was at 2035 Napoleon Avenue, City of Oxnard, on Monday, 7 February '77 where he made contact with a subject known to him as Mike Schmidt. The informant advised your affiant that Mike Schmidt opened a floor safe inside his residence and displayed approximately one pound of cocaine and a large amount of marijuana. The informant advised your affiant that Mike Schmidt requested that he sell the cocaine for him at $1300.00 per ounce and make $300.00 profit for himself (informant).

confidential reliable informant (four previous tips which had resulted in arrests) advised him that on February 7 defendant Michael Schmidt had opened a floor safe in his residence in informant's presence, displayed approximately one pound of cocaine and a large amount of marijuana, and asked informant to sell the cocaine for him; at 12:15 p.m. on February 14 informant reported he had just left defendants' residence, where defendant Michael Schmidt told informant he had only Thai sticks (concentrated marijuana) at his residence but would have cocaine on hand that night. A picture of the residence was attached to the affidavit. Skeeter suspected Schmidt was a large-scale dealer in cocaine and sought the warrant in the hope of finding cocaine and Thai sticks in the residence.

The magistrate issued the warrant. On February 15 Detective Skeeter and three other officers searched defendants' residence and seized, among other items, hashish oil, a hashish oil laboratory processor, hashish paraphernalia, and cocaine paraphernalia. They did not find cocaine or Thai sticks or any indication of the floor safe referred to by the informant. They refused defendants' offer to pull the carpet off the floor as action going beyond the scope of their warrant.

Jose Sepeda was the informant referred to in the affidavit. He had been arrested previously by Skeeter for possession of 20 to 30 pounds of marijuana. He provided information to the police under an agreement whereby Skeeter would recommend to the district attorney a reduction or dismissal of the charges against him, depending upon Sepeda's efforts in providing information and the results (seizures or arrests) of those efforts. Prior to the execution of the affidavit, Sepeda had provided information which resulted in the arrest of four individuals for narcotic violations.

---

"On 14 February '77, at approximately 1215 hrs, your affiant was contacted by the same informant at the Oxnard Police Department. The informant advised your affiant that he had just left 2035 Napoleon Ave., Oxnard where he had met with Mike Schmidt. The informant advised your affiant that Mike Schmidt had advised him that all he had at his residence was Thai sticks (marijuana) at this time but he is picking up a load of cocaine tonight and would have same at his (Schmidt's) residence at that time.

"Your affiant was advised by the informant that he has seen cocaine and marijuana several times in the recent past. Your affiant has personal knowledge that the informant has given information to your affiant four times in the recent past which. led to the arrest and seizure of narcotic violators and narcotics and that the information obtained from the informant was true and correct."

At the motion to suppress evidence a Spanish interpreter was provided for Sepeda. Sepeda denied the statements attributed to him in the affidavit, stating: Schmidt never requested he sell cocaine; Schmidt never displayed cocaine to him; Schmidt never said he was expecting a shipment of cocaine on February 14; he (Sepeda) had only been in defendants' residence once; he did not tell Skeeter about a floor safe at that address. Sepeda testified that a floor safe was located at a house at 333 East Iris Street owned by defendant's father, that he learned of this safe from a resident in the house and not from personal observation. He also testified he had received threats to kill him or his family if he should testify.

A witness testified that on February 14 defendant Michael Schmidt worked at her residence the entire day, without interruption, building a fence.

The People offered rebuttal evidence. Skeeter testified that Sepeda told him of another floor safe at the Iris address, for which a search warrant had also been sought; Sepeda had drawn diagrams indicating the location of the floor safe in defendants' house; on the six occasions when Skeeter spoke with Sepeda he had been able to understand him without an interpreter even though Sepeda spoke in broken English. Detective Stephen Hendrick, present during Skeeter's February 14 interview with Sepeda, testified Sepeda told them he had observed a floor safe and what he thought was cocaine at 2035 Napoleon Ave., which he knew was defendants' residence, that the safe was located under the carpet in the center of the den area. He also testified that at the time of the interview an investigation was underway concerning the 333 Iris Street premises—also owned or occupied by members of the Schmidt family.

After considering all evidence, the trial court (1) specifically found the informant did tell Detective Skeeter the information related in the affidavit, (2) found the informant was reliable; (3) but also found that informant was not a percipient witness to the transaction involving the floor safe and cocaine, and that therefore the *Aguilar* requirement for personal knowledge had not been satisfied. On the district attorney's protest, the court stated that because the informant had difficulty with English the court doubted the informant had made the specific statements attributed to him in the affidavit. The court then reiterated the informant's lack of personal knowledge and granted the motion to suppress. The People's petitions for writ of mandate in the Court of Appeal (Pen. Code, § 1538.5, subd. (o)) and in the Supreme Court were

denied without opinion. Thereafter, all charges were dismissed for lack of evidence, and the People brought this appeal.

## DISCUSSION

1. ■ Defendants assert the People are barred from bringing this appeal by the doctrine of res judicata. Penal Code section 1538.5, subdivision (j) provides ". . . If the People prosecute review by appeal or writ *to decision* . . . it shall be binding on them." (Italics ours.) When a petition for writ of mandate is denied without opinion, the denial is not a decision and not res judicata on the issues raised. Hence the denial does not preclude a subsequent appeal, unless it clearly appears the denial was based on the merits. (*People* v. *Medina* (1972) 6 Cal.3d 484, 488-90 [99 Cal.Rptr. 630, 492 P.2d 686]; *People* v. *Paris* (1975) 48 Cal.App.3d 766, 770 [122 Cal.Rptr. 272].) Here, there was no written opinion by either appellate court and no suggestion that the denials of the writ were on the merits.[2] Defendants' threshold assertion therefore lacks merit.

2. ■ The trial court erred when it held, after argument on the motion, that the two-prong standard of *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], controlled its disposition, because of the lack of personal knowledge shown in the informant's statements.[3] ■ *Aguilar* requires an affidavit based on the hearsay statement of an informant to set forth underlying facts from which the reviewing magistrate can reasonably conclude (1) the informant is reliable or credible and (2) the statements contained in the affidavit are made upon the informant's personal knowledge. (*Aguilar* v. *Texas, supra,* pp. 113-114 [12 L.Ed.2d pp. 727-729]; *People* v. *Mesa* (1975) 14 Cal.3d 466, 470, fn. 1 [121 Cal.Rptr. 473, 535 P.2d 337].) On its face the affidavit here was sufficient to comply with the *Aguilar* standard.

---

[2] We take judicial notice of the court file in *People* v. *Superior Court*, 2 Civ. 51888. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).)

[3] The trial court stated after argument on the motion:

". . . let's get back to the very basic question, the *Aguilar* case.

"It is traditional that you can go behind a search warrant. It is traditional that there is a two-fold standard, that the informant is reliable. I accept the proof.

"Secondly, that he was a percipient witness, and *that's really the issue here.*

"It really isn't a *Theodore* issue. It is the old basic of from the things he said was he a percipient witness, and they do have a right to go behind the search warrant to find that out, if that was the only information. *He wasn't a percipient witness.* . . .

". . . . . . . . . . . . . . . . . . . . . . .

"From the entire evidence, *I can't find that he was a percipient witness to a transaction* in that house, where he saw somebody with cocaine and a floor safe. It is just not there, Mr. Lambert." (Italics added.)

3. ■ When a defendant seeks to prove there was no probable cause for issuance of a warrant, and during a Penal Code section 1538.5 hearing he demonstrates the inaccuracy of informant statements contained in the supporting affidavit, the burden of proof rests on the prosecution to show good faith belief in the accuracy of the information given and reasonableness of the reliance placed upon it by the applicant for the warrant. (*Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 101-102 [104 Cal.Rptr. 226, 501 P.2d 234]; *Morris* v. *Superior Court* (1976) 57 Cal.App.3d 521, 525-526 [129 Cal.Rptr. 238].) At bench, the trial court stated its belief the informant was reliable and had made the statements to the officers set out in the affidavit. The court then noted the absence at the residence of cocaine, Thai sticks, and floor safe, all of which were mentioned in the affidavit, and from these facts it specifically found the informant did not have personal knowledge of the floor safe or cocaine, that he was not a percipient witness. The court then concluded that a reliable informant must have had in fact an opportunity to see, i.e., be percipient: "Otherwise, any informant can fabricate anything he wants. This is the very concern before you go in people's houses, otherwise, we could just do away with the whole concept of whether or not he is a percipient. If, in fact, he told the officers that he saw something, that is sufficient for the warrant; it is sufficient for probable cause without a warrant, but *you have got a right on probable cause to go* through the chain and *find out whether or not that, in fact, occurred.*" (Italics added.) In the court's view, since the testimony at the hearing indicated the informant was not a percipient witness, the evidence obtained in the execution of the search warrant had to be suppressed.

The court then compounded confusion by noting the speech difficulty of the informant and expressing a doubt that the informant had made the specific statements attributed to him by the officers. As nearly as we can interpret the gist of these supplementary remarks, the court was expressing doubt that the informant had made the statements to the officers in the form in which they were presented to the magistrate. In substance, the court first stated the informant had made the statements quoted by the officers in the affidavit, but then later suggested the officers had misunderstood what the informant had said. Seemingly, the trial court implied that because of language difficulties the officers acted unreasonably in relying on the informant's assertions of personal knowledge. ■ But be this as it may, at the very end of its remarks

the trial court returned to its first conclusion that the search warrant was invalid because the informant could not have been the percipient witness he claimed to have been at the time of issuance of the warrant.

The question thus presented by the trial court's ruling is whether a search warrant, issued on the basis of a reliable informant's claim of personal information which provides reasonable cause for issuance of the warrant, becomes invalid on disproof of the truth of the informant's information. Does later disproof of fact invalidate the warrant? Do subsequent discoveries annul what was reasonable cause at the time for issuance of the warrant? We know that a warrant invalid at the time of issuance may not be validated by subsequent discoveries—i.e., by what it turns up. We think the opposite is also true—that a warrant valid at the time of its issuance is not later invalidated by what it fails to turn up. The only relevancy of subsequent events to the validity of the warrant lies in the light they may throw on the applicant's good faith, reasonable belief in the truth of the reliable informant's information. The reliable informant who provides misinformation will, of course, lose his future status as an informant of known reliability, but this prospective loss of status does not relate back to annul his status as a reliable informant at the time his information was used to obtain the search warrant.

What the trial court seems to have done is to find the informant unreliable on the basis of facts turned up in the execution of the search warrant. We do not think this use is proper, except as those facts bear on the good faith, reasonable belief of the applicant for the search warrant in the truth of the information relied upon to obtain the warrant—a good faith, reasonable belief not seriously attacked here. The opinion in *Theodor v. Superior Court* (1972) *supra,* 8 Cal.3d 77, makes it clear that good faith and reasonableness of belief, not ultimate truth, provide the test to determine the validity of a search warrant:

"While undeniably misstatements impede the function of the magistrate, once it has been determined that the affiant has acted reasonably under the circumstances, little more can be required of him. To exclude evidence obtained pursuant to a warrant issued on the basis of facts upon which an affiant has reasonably relied as being accurate serves no purpose of deterrence to unlawful conduct since, by definition, the affiant has already made a reasonable attempt to comply with the requirements of the Fourth Amendment." (P. 97.)

The order suppressing evidence and the judgment of dismissal are reversed.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied August 8, 1978.