[No. A082163. First Dist., Div. Two. Feb. 4, 1999.]

THE PEOPLE, Plaintiff and Appellant, v.
CHARLES MARSHAL BONDS, Defendant and Respondent.

**[Opinion certified for partial publication.†]**

†This opinion is certified for partial publication pursuant to rules 976(b) and 976.1 of the California Rules of Court, with the exception of part III.B.

## COUNSEL

William Everett Glass for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Mia Anna Mazza, Deputy Attorney General, for Defendant and Respondent.

## OPINION

## HAERLE, J.—

### I. INTRODUCTION

Pursuant to Penal Code section 1238, subdivision (a)(7), the People appeal from an order dismissing the action against defendant and appellant Charles Marshal Bonds after the superior court granted Bonds's pretrial motion to quash a search warrant and suppress evidence. (Pen. Code, § 1538.5.)[1] After searching Bonds's house, the police seized over $65,000 in cash, approximately 250 grams of cocaine powder, a little over 5 grams of cocaine base, and almost 330 grams of marijuana. Scales, packaging material and other evidence of narcotics sales were also seized. Bonds was charged by indictment with possession for sale of rock cocaine (Health & Saf. Code, § 11351.5); possession for sale of cocaine (Health & Saf. Code, § 11351); and possession for sale of marijuana (Health & Saf. Code, § 11359).

Although Bonds argues that the motion dismissing this action is not appealable, we do not find this position persuasive and, therefore, address the merits of this appeal. The People contend that the trial court should not have granted Bonds's motion to suppress because (1) there was sufficient probable cause to justify issuance of the warrant and, (2) even in the absence of probable cause, the *Leon*[2] "good faith" exception to the Fourth Amendment exclusionary rule applies. We agree with the latter argument and, accordingly, reverse.

### II. FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 1997, a magistrate issued a search warrant based on the affidavit of Pittsburg Police Detective Darrell Young. The warrant authorized the search of Bonds's residence at 152 William Way in Pittsburg, his car, and his person for cocaine and narcotics paraphernalia. Detective

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *United States* v. *Leon* (1984) 468 U.S. 897 [104 S.Ct. 3405, 82 L.Ed.2d 677].

Young's statement of probable cause was based on information obtained from two confidential informants, police surveillance, and his own experience.

Detective Young's first source was a "confidential reliable informant" or "CRI." In his affidavit, Young explained that the CRI was considered "reliable" because he had provided Young with information on at least five other occasions which led to the issuance of search warrants, the seizure of illegal drugs and the arrests of criminal violators. Young had never known the CRI to provide false or unreliable information to law enforcement personnel. The CRI provided this information in return for "consideration in a pending criminal matter."

Sometime within 10 days before the search warrant was issued, the CRI told Young that Bonds, whom the CRI had known for several years, was "heavily involved in the sales of cocaine and cocaine base and that . . . Bonds conducts these sales" from 152 William Way in Pittsburg. In addition, the CRI also told Young that he had seen Bonds, within the 10 days before the search warrant was issued, "in possession of large quantities of cocaine that are consistent with possession for sale, as opposed to personal use." The CRI was an "admitted" former cocaine user and, therefore, familiar with cocaine's appearance, composition, price and packaging.

Detective Young's affidavit was also based on information he received from another member of the Pittsburg Police Department, Detective Lemay. Detective Lemay told Detective Young that, a month earlier, he (Detective Lemay) had been told by an "untested confidential informant" or "CI" that a man named "Chuck" was selling cocaine from an address on William Way, in Pittsburg. The CI had given Detective Lemay a detailed description of both Bonds's house and cars. The Pittsburg Police Department conducted "numerous hours" of surveillance of the house and observed Bonds coming and going from the house using a key to lock and unlock the door. Detective Young's affidavit does not reveal that the surveillance resulted in any information which confirmed that Bonds sold narcotics from his house. Instead, the surveillance operation confirmed that Bonds lived at the house because he owned one of the vehicles in the driveway of the William Way house and the address for the car's registration was the William Way address.

Finally, Detective Young proffered his own opinion, based on his training and experience, that persons involved in the sale of cocaine (as he believed Bonds to be, based on the information provided to him by the CI and CRI) often keep a supply of the drug at their residences along with other evidence

of cocaine sales such as packaging material, scales, cutting agents, United States currency and documentary evidence of sales.

The trial court granted Bonds's pretrial motion to quash the search warrant and suppress evidence (§ 1538.5). It explained the basis for its ruling as follows: "There is a CI. The CI's alerting of the police results in observation of the house and no observation of any criminal activity. CRI does indeed say he saw within the ten days of, I guess, the issuance of the warrant, Mr. Bonds in possession of large quantities of cocaine but doesn't tell us where that is, whether it's in this state or this county or what city, and it is a quantum leap to assume that without any more observable facts a person seen in some undesignated place with contraband also possesses that contraband in his home, so I find that there was no probable cause for the issuance of the warrant. [¶] And furthermore, I find that the affidavit is so defective that there is no reasonably well-trained officer who would believe there's evidence of a crime at the residence address when there's no evidence connecting the sales to that address."

At the pretrial readiness conference several weeks later, the People informed the court that, "[b]ased on the court's ruling, we're unable to proceed at this time." The trial court then noted "I don't hear a request for continuance or dismissal, so it seems to me on my own behalf since they're announcing they're not able to go forward, I will dismiss the case."[3] This timely appeal then followed.

---

[3]The conversation leading up to the dismissal was as follows.:

"[Prosecutor Grassini]: Based on the Court's ruling, we're unable to proceed at this time.

"[Defense Attorney Glass]: I'd like to know what it is the prosecution is asking.

"[Prosecutor Grassini]: I'm not asking for anything. I'm just telling the Court we're unable to proceed at this time based on the Court's ruling on the motion to quash.

"[Defense Attorney Glass]: They have to ask for a motion to continue the trial date or they're asking to dismiss under 1385. I'd like to know what they're requesting.

"[Prosecutor Grassini]: Appreciate Mr. Glass's opinion on what I have to do. [¶] I'm telling the Court at this point in time, we're not able to proceed based on the Court's ruling on the motion to quash.

"[The Court]: Mr. Grassini, you are unable to proceed today, I believe you're, in effect, telling me you're not going to be able to proceed on Monday either.

"[Prosecutor Grassini]: At this point in time, it is—I'm not requesting at this time. I'm just advising the Court.

"[The Court]: I'm not going to waste either of your time with an appearance in front of the presiding judge if you're representing to me you're going to tell him the same thing Monday.

"[Prosecutor Grassini]: That's correct.

"[Defense Attorney Glass]: I don't suggest we waste an appearance before the presiding judge, Your Honor. I'm just saying that there is no hearing, there is no matter before the Court right now other than the readiness conference. [¶] The prosecution has said as a result of the Court's granting of a motion to suppress, which occurred on February 25th, they're not able to proceed, so I want to know if they're asking for a continuance of the trial date so they can file a writ pursuant to Penal Code Section 1538.5 since they haven't had 30 days since the

## III. Discussion

### A. *Appealability of the Trial Court's Order*

Bonds contends that the People's statement of their inability to go forward amounted to a prosecutorial motion to dismiss which, if granted, is not appealable under section 1238, subdivision (a)(7). At oral argument, counsel were asked whether the People, in announcing their inability to go forward without also requesting a dismissal under section 1385,[4] were doing so in order to obtain appellate review[5] under section 1238, subdivision (a)(7) (which permits a People's appeal in those cases in which the trial court "acts on its own motion" [*People* v. *Caserta* (1971) 14 Cal.App.3d 484, 487 [92 Cal.Rptr. 382]) when it properly should have sought writ review under section 1538.5, subdivision (o) (which permits the People to bring a writ and stay trial following a successful defense suppression motion). Counsel also discussed at oral argument our concern that, by making clear their inability to go forward without also seeking a dismissal, the People were attempting to *force* the trial court to dismiss a case in the furtherance of justice under section 1385, which would seem inconsistent with the discretionary dismissal power granted to the trial court under this section.

In order to better understand the import of the People's actions in this case, we look to the rationale behind the enactment of sections 1238, subdivision (a)(7), and 1538.5. Section 1538.5 was enacted in 1967. At the same time, the Legislature added subdivision (a)(7) to section 1238. As our Supreme Court later explained, "Prior to [1967] a defendant had two methods of challenging before trial the admissibility of evidence obtained by a warrantless search and seizure: i.e., a nonstatutory motion to suppress [citation] and a statutory motion to set aside the accusatory pleading (§ 995) on the ground that it rested entirely on evidence obtained by an illegal search

granting of the motion, or if they're asking the Court to dismiss under 1385. They've got to be asking for one of the two, and I can't tell which remedy they're seeking.

"[The Court]: I take this, Mr. Glass, to be no different than if they showed up on Monday and said the same thing to the presiding judge, we are unable to proceed. He tells me that won't change before Monday.

"[Defense Attorney Glass]: Right. They'd either request a continuance or ask for dismissal.

"[The Court]: I don't hear a request for continuance or dismissal, so it seems to me on my own behalf since they're announcing they're not able to go forward, I will dismiss the case."

[4]Section 1385, subdivision (a), provides: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."

[5]Although both types of review are heard by the Courts of Appeal, and therefore could properly be called "appellate review," we refer here to the review available to the People under section 1238, subdivision (a)(7) as "appellate review" and the review available under section 1538.5, subdivision (o) as "writ review."

and seizure [citation]. [Citations.] There were a number of significant differences between the two procedures, however, and one of those differences was in the opportunity for immediate review. Each party was accorded an immediate review of a ruling on a motion to set aside an accusatory pleading: the People could take a direct appeal (former § 1238, subd. 1; now § 1238, subd. (a)(1)), and the defendant could petition for a writ of prohibition (§ 999a). But there was no such review of a ruling on a motion to suppress: that ruling would support neither an appeal [citation] nor a petition for writ [citation]. This omission tended to work a greater hardship on the People than on the defendant, as the latter had the right to obtain appellate review of the ruling after any ensuing conviction. [¶] Section 1538.5 was enacted in part to remedy the omission. [Citation.] It now provides multiple opportunities for immediate review by both parties of rulings on motions to suppress. . . . In felony cases, the People can petition for writ if the prosecution has not been dismissed on motion of the superior court pursuant to section 1385 (§ 1538.5, subd. (o)), and can appeal if it has (§ 1238, subd. (a)(7) . . . ." (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 716-717 [195 Cal.Rptr. 503, 669 P.2d 1278], fn. omitted (*Laiwa*).)

■ Under this statutory scheme, the People petition for a writ, "when some evidence is suppressed but enough evidence remains on which to try the case." (Cal. Criminal Law, Procedure and Practice (Cont.Ed.Bar 1998) § 20.34, p. 510 (hereafter CEB).) On the other hand, "[i]f the superior court grants a motion to suppress evidence, and the prosecution announces that it is unable to proceed without the suppressed evidence, the court on its own motion should dismiss the action under Pen[al] C[ode] § 1385." (CEB, *supra*, § 20.33, p. 509, citing *Laiwa*, *supra*, 34 Cal.3d at p. 722.)

In our view, these two methods for seeking appellate review are tailored to fit the two postures in which the People might find themselves following a successful motion to suppress evidence. In the first posture, the People have sufficient evidence to go forward despite the suppression of some evidence. Writ review would then be the preferable form of appellate review because it permits a speedy inspection of the trial court's ruling. The trial of the criminal case is stayed while the appellate court considers the People's writ. (§ 1538.5, subd. (*l*).) When these proceedings are terminated, the People are then required to bring the defendant to trial. If the defendant is not brought to trial within 30 days after a writ petition is denied, the defendant may move to have the action dismissed. (*Ibid.*) Moreover, when the People seek writ review, a defendant charged with a capital offense "where the proof is evident and the presumption great" may not be discharged at all and a defendant charged with noncapital murder will be discharged only if the court permits discharge upon bail. (§ 1538.5, subd. (k).)

In the second posture, the People are unable to go forward without the suppressed evidence. In this situation, the People announce this fact to the trial court with the expectation that the matter will be dismissed on the court's own motion under section 1385. The People may then bring an appeal (although they are not required to) and the defendant is released on his or her own recognizance, pursuant to section 1218. (§ 1538.5, subd. (j).) Should the dismissal be affirmed on review, the People are bound by this ruling (§ 1538.5, subd. (j))[6] and, although they may attempt to refile the case against the defendant, given the absence of evidence to try the defendant and the binding nature of the appellate court's determination regarding the inadmissibility of the suppressed evidence, little would be gained by doing so.

In light of these authorities, we conclude that the People properly availed themselves of the form of appellate review most appropriate when, as a result of a ruling on suppression motion, the People are without sufficient evidence to go forward.

The parties also discussed at oral argument the concern that, by making clear its inability to go forward without also seeking a dismissal, the People might force the trial court to dismiss a case in the furtherance of justice under section 1385 and thus take away from the court the discretion granted to it under section 1385. We note that, although our Supreme Court has never considered a challenge to this practice, its existence has not raised any judicial eyebrows to date. For example, in *People* v. *Brooks* (1980) 26 Cal.3d 471, 474 [162 Cal.Rptr. 177, 605 P.2d 1306], the court noted that, after an earlier defense suppression motion was granted, "[w]hen the People announced their inability to proceed, the court dismissed on its own motion." Similarly, in *People* v. *Campa* (1984) 36 Cal.3d 870, 876 [206 Cal.Rptr. 114, 686 P.2d 634], the court observed that "[w]hen the people conceded that they had no other evidence to sustain a conviction, the trial court dismissed the charges on its own motion." This procedure is also mentioned with approval in at least one practice guide. (CEB, *supra*, § 20.33, p. 509.)

In our view, when the prosecution announces its inability to go forward because of the lack of evidence, it does not strip the trial court of discretion to dismiss, but instead, provides the trial court with information it needs in order to determine whether a dismissal in the interest of justice is appropriate. Our Supreme Court describes the interplay between the prosecution and

---

[6]Section 1538.5, subdivision (j) provides that "If the people prosecute review by appeal or writ to decision, or any review thereof, . . . it shall be binding upon them." As one court puts it, "[t]he plain command of this sentence is that once the People obtain a decision from the appellate court, either by appeal or by writ, they may not relitigate the lawfulness of the search in the trial court or on appeal; they are bound by the decision." (*People* v. *Carrington* (1974) 40 Cal.App.3d 647, 650 [115 Cal.Rptr. 294].)

the judge when this issue arises as follows: " 'Since the superior court, in dismissing under section 1385, does so on motion (albeit its own motion), the People are afforded an opportunity to show that they have other evidence . . . which would justify a trial although some evidence adverse to defendant had been suppressed.' " (*Laiwa, supra,* 34 Cal.3d at p. 722, fn. 7.) Here, the People informed the trial court that they did not have enough evidence to justify a trial. Knowing this, the trial court correctly dismissed the matter. We see nothing wrong with this practice.

We next address the question of whether the record adequately reflects that the trial court dismissed this case on its own motion in the furtherance of justice, as required under section 1385. Our task here would have been simplified had the trial court clearly stated that it was dismissing the action against Bonds "on the court's own motion in the furtherance of justice under section 1385." It did not do so. Instead, at the pretrial readiness conference, the prosecutor informed the court that "at this point in time, we're not able to proceed based on the Court's ruling on the motion to quash." At this conference, perhaps to ensure that the People would not seek review of the dismissal, Bonds's attorney argued that the People were required to ask either for a continuance in order to seek writ review or a dismissal on the prosecution's own motion under section 1385. The court, however, stated that "I don't hear a request for continuance or dismissal, so it seems to me on my own behalf since they're announcing they're not able to go forward, I will dismiss the case." While the trial court did not expressly state it was dismissing the case on the court's motion, the context in which the dismissal occurred leaves little doubt that this is what occurred. The court explicitly stated that it did not "hear a request for continuance or dismissal"—another way of saying that the dismissal was not based on a motion from the People. Given that the only remaining possibility would be a dismissal on the court's own motion, it is difficult to read this dismissal as emanating from any source other than the court.

Finally, Bonds argues that the order dismissing his case is not appealable under section 1238, subdivision (a)(7), because the court dismissed the matter at the trial readiness conference, 15 days after it had granted his motion to suppress, rather than on the same day as the motion to suppress was granted. We do not agree that this 15-day period between the granting of the motion to dismiss and the actual dismissal renders the court's order nonappealable.

The appealability of an order dismissing a case made upon the court's own motion under section 1385 does not turn on whether that order is contemporaneous with the order granting the motion to dismiss. Section 1238,

subdivision (a)(7), provides that the People may take an appeal from "[a]n order dismissing a case prior to trial made upon motion of the court pursuant to Section 1385 whenever such order is based upon an order granting the defendant's motion to return or suppress property or evidence made at a special hearing as provided in this code." Section 1238, subdivision (a)(7), therefore, requires only that the order dismissing the case be made *prior to trial*, as it was in this matter.

Section 1538.5, subdivision (*l*), does authorize a trial court "at the same time as it rules upon the search and seizure motion" to dismiss a case "pursuant to Section 1385 when the dismissal is upon the court's own motion and is based upon an order at the special hearing granting the defendant's motion to return property or suppress evidence." However, in our view, although this section *permits* the court to dismiss a case at the time it grants a motion to suppress, it does not *require* that such a dismissal be made at this time. Section 1238, subdivision (a)(7), clearly contemplates that such a dismissal might be made at any time "prior to trial." Here, the trial court dismissed this matter, on its own motion, prior to trial. Therefore, its order is appealable.

B. *The Search Warrant**

. . . . . . . . . . . . . . . . . . . . . . . . . .

IV. DISPOSITION

The court's order granting Bonds's motion to suppress and the judgment of dismissal are reversed.

Kline, P. J., and Lambden, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 12, 1999. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 732.