[No. H034446. Sixth Dist. Sept. 30, 2010.]

THE PEOPLE, Plaintiff and Appellant, v.
RAELENE ELVERA JAHANSSON, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rule 8.1105(c), this opinion is certified for publication with the exception of part IV.B. of the Discussion.

COUNSEL

Dolores A. Carr, District Attorney, and Judith B. Sklar, Deputy District Attorney, for Plaintiff and Appellant.

Scott D. Handleman, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.—**

## I. INTRODUCTION

Defendant Raelene Elvera Jahansson was charged by information with one felony, possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)), and two misdemeanors, using or being under the influence of methamphetamine (Health & Saf. Code, § 11550, subd. (a)) and possession of a hypodermic needle or syringe (Bus. & Prof. Code, § 4140). The trial court subsequently granted defendant's motion to suppress evidence pursuant to Penal Code section 1538.5.[1] The People challenged the trial court's order by filing a petition for writ of mandate in this court. After the writ petition was summarily denied, the People advised the trial court that they were unable to proceed due to the suppression of the evidence. The trial court then dismissed the case under section 1385.

In the published portion of the opinion, we determine that the People's appeal is not barred by their prior petition for a writ of mandate. In the unpublished portion of the opinion, following the direction of *People v. Glaser* (1995) 11 Cal.4th 354 [45 Cal.Rptr.2d 425, 902 P.2d 729], we conclude that under the circumstances of this case, the defendant's initial detention outside the premises to be searched was lawful incident to the probation search of the premises, but her continued detention in handcuffs was not reasonable under the Fourth Amendment. (*People v. Stier* (2008) 168 Cal.App.4th 21 [85 Cal.Rptr.3d 77] (*Stier*).) We will therefore affirm the dismissal order.

## II. FACTUAL BACKGROUND

Our summary of the relevant facts, which are essentially undisputed, is taken from the transcript of the April 21, 2009 evidentiary hearing on defendant's motion to suppress evidence.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

The sole witness at the hearing on the motion to suppress evidence was Bret Moiseff, a police officer for the City of San Jose. At the time of the search and seizure at issue in this case, Officer Moiseff was assigned to the Santa Clara County Specialized Enforcement Team, which investigates drug sale offenses. On September 9, 2008, Officer Moiseff was involved in the surveillance of a house at 105 Morrow Court in San Jose. The police surveillance was being conducted because Officer Moiseff had received information that the resident, Bob Hatzenpiller, was selling methamphetamine to "persons that would come and go from the [Morrow Court house]." Officer Moiseff was also aware that Hatzenpiller was on probation with a search condition.

While Officer Moiseff was surveilling the house at 105 Morrow Court about 3:00 p.m. he observed "a Hispanic male" park several houses away, then walk towards the house while making a cell phone call. The man "stayed a short time at the [Morrow Court house], and then walked back to his car, looking around in an excited and/or determined manner as he walked, paused, and ultimately returned to his car."

Officer Moiseff then observed defendant and a male companion park their car in front of the house at 105 Morrow Court. One or both of them got out of the car, walked towards the front door of the house, and did not return to their car for about 20 to 30 minutes. Although Officer Moiseff did not see defendant and her male companion go into the house, because he did not have a view of the front door, he testified that "both went to . . . what appeared to be into the residence, or at least to the front of the residence out of my sight. It was over the course of the next 20 to 30 minutes where one, if not both, to the best of my recollection, went to and from the car, appearing to be either bringing items to or from the vehicle back to the house, before ultimately both departed." Officer Moiseff also observed that either defendant or her companion was carrying a duffelbag or backpack.

After defendant and her companion drove away, Officer Moiseff continued his surveillance of 105 Morrow Court. Shortly after 4:00 p.m., Officer Moiseff saw Hatzenpiller leave the house and walk towards a nearby strip mall. As he was walking, Hatzenpiller was detained by other agents working with Officer Moiseff. While Hatzenpiller was detained, Officer Moiseff spoke with him in preparation for the probation search that was about to be conducted at 105 Morrow Court. Based on his experience in the investigation of methamphetamine possession and sale, Officer Moiseff wanted to know whether the officers would confront any persons in the house who could arm ·

themselves, destroy evidence, or interfere with the search. He was also concerned that persons outside the residence might have access to a cell phone and alert persons inside the house. Hatzenpiller told Officer Moiseff that there was at least one other person in the house and volunteered the information that "there was methamphetamine in his residence."

After learning from Hatzenpiller that there was methamphetamine in the house at 105 Morrow Court, Officer Moiseff and the other officers decided to walk back to secure the house for the probation search. At that time, Officer Moiseff was particularly concerned about officer safety while conducting the probation search at 105 Morrow Court because he "had seen persons come and go, and it was clear that several persons had been visiting him and/or staying there . . . ." His officer safety concerns were also based on Hatzenpiller telling him that there was at one least other person and methamphetamine in the house.

While they were approaching the house on foot, Officer Moiseff saw defendant and her male companion return, about 40 or 50 minutes after they had left, and park "in front of the residence, slight offset from the residence, but still in the same area of the house with the same persons in the vehicle." Officer Moiseff and the other officers, who were wearing police jerseys, decided that they needed to "pick up the pace" because defendant and her companion could see them and the officers did not know who they were.

Officer Moiseff had several concerns after seeing defendant and her companion return to the vicinity of 105 Morrow Court. In addition to his concerns about the other person and the methamphetamine in the house, he was now also concerned about defendant and her companion, whom he described as "persons who I believe were associated with the residence, whether they are tenants, co-conspirators, customers, or friends, whatever they may be, were now in a position to see [us] and be in contact with the residence; whether it's via cell phone, or simply walking to the residence, because they were closer than we were . . . . They had a head start, if you will, if they wanted to run, which they didn't. They stayed at the car." Also, Officer Moiseff noticed that defendant's car did not have any license plates.[2]

Because Officer Moiseff believed that defendant and her companion "were involved and/or could thwart our investigation and subsequent search," he walked directly to defendant's car with the other officers, identified himself as a police officer, and told defendant and her companion that he and the other officers were conducting a probation search and they would be detained until

---

[2] Officer Moiseff testified that it was determined, at some point during defendant's detention, that there "was a valid answer for the vehicle."

the officers could secure the residence. Next, Officer Moiseff "asked both of them out of the vehicle and directed their detention at the vehicle."

During Officer Moiseff's initial one-minute contact with defendant, she was cooperative and he did not notice any symptoms indicating that she was under the influence of drugs. Nevertheless, defendant and her companion were immediately put in handcuffs. The reason for the handcuffing was "to prevent them from doing anything that could thwart the safety of [the officers] making contact at the residence. [¶] [Officer Moiseff] didn't know their association to the house; whether they were tenants, occupants, co-conspirators, friends, associates. [¶] [He] didn't know if either one had cellular phones on them, which people normally do these days." Officer Moiseff then asked another officer to stand by defendant and her companion as he and the other officers continued walking towards the house.

After detaining defendant and her companion in handcuffs, Officer Moiseff knocked on the front door of the two-story house and with the other officers entered and conducted a protective sweep that lasted "between five and ten minutes." They found a woman lying on a couch and a loft containing a "makeshift marijuana cultivation area." After completing the protective sweep, Officer Moiseff returned to defendant and her companion, who were then being detained in handcuffs "closer towards the patio area of the front door."

At that point, Officer Moiseff had a second conversation with defendant and her companion, in which he was "trying to determine their involvement with the house." During that conversation, Officer Moiseff observed that defendant displayed symptoms consistent with being under the influence of a controlled substance, including a nervous and excited demeanor, a fragmented speech pattern, and a dry mouth. Another officer found that defendant also had a rapid pulse.

Having determined that defendant was under the influence of a controlled substance, Officer Moiseff arrested her for violating Health and Safety Code section 11550, subdivision (a). He also asked her if he could search her vehicle and defendant said, "Yes." The items found during the search of defendant's car included a Kleenex box containing syringes. Defendant admitted that she had methamphetamine in her possession, which was found during a subsequent search of her person by female officers.

### III. PROCEDURAL BACKGROUND

The felony complaint filed on September 15, 2008, charged defendant with a felony, possession of methamphetamine (Health & Saf. Code, § 11377,

subd. (a); count 1) and two misdemeanors, using or being under the influence of methamphetamine (Health & Saf. Code, § 11550, subd. (a); count 2) and possession of a hypodermic needle or syringe (Bus. & Prof. Code, § 4140; count 3). After a preliminary hearing, defendant was held to answer on all charges. The information was filed on January 15, 2009.

On April 6, 2009, defendant filed a motion to suppress evidence under section 1538.5 that sought an order suppressing all evidence obtained as a result of the search and seizure on September 9, 2008, including any statements by defendant, any officer observations, the results of any chemical or laboratory analysis, and any item found in defendant's possession. Defendant generally asserted that the warrantless search and seizure violated the Fourth Amendment, under the procedure set forth in *People v. Williams* (1999) 20 Cal.4th 119, 130 [83 Cal.Rptr.2d 275, 973 P.2d 52].

In their opposition to the motion to suppress evidence, the People argued that the warrantless search of defendant's person and car did not violate the Fourth Amendment because defendant's initial detention was lawful. The People explained that the police officers had a reasonable suspicion that defendant was involved in criminal activity, since she had been observed walking to and from a house where, the officers had been informed, several customers came daily to purchase methamphetamine. The People also pointed to the absence of license plates on defendant's car as an additional reason to detain and investigate defendant. Alternatively, the People argued that defendant's initial detention was justified on the ground of officer safety during a protective sweep. The continued detention of defendant after Officer Moiseff observed that she was under the influence of a controlled substance was also lawful, the People argued, because at that point probable cause existed to place defendant under a warrantless custodial arrest. Finally, the People maintained that defendant had consented to the search of her car.

In her reply, defendant contended that Officer Moiseff could not have had a reasonable suspicion that she was involved in criminal activity, or any reason to handcuff her, because he only had a "generalized suspicion that anyone associating with Mr. Hatzenpiller may be doing something illegal" and other officers were aware that her car had a temporary registration. Defendant also rejected the People's claim that her detention was lawful as incident to a protective sweep, on the ground that she had given the officers no reason to believe that she posed a danger or would interfere with their investigation. Moreover, defendant denied that she had voluntarily consented to the search of her car, since she had been placed in handcuffs before the officer requested her consent.

The trial court granted the motion to suppress evidence on April 28, 2009. The court also ordered that the evidence to be suppressed included the

methamphetamine found on defendant's person, the observations of defendant after her detention, the results of intoxication and laboratory tests, and the syringes found in defendant's car. After granting the motion and ordering the suppression of evidence, the trial court noted that, as of April 28, 2009, the matter remained on the master trial calendar "to allow the People to evaluate their case."

The trial court's ruling from the bench also included the court's finding that defendant's detention was unlawful: "[W]hat troubles me is, there was no warrant in this case. It was a probationary search. So there was just some information the officers had that the resident of the home was selling methamphetamine. So we don't even know the quality of the information. We don't need to know the quality of the information, because it was a probationary search. The officers didn't really even need a reason to go in. And I think that your argument would be valid about the defendant being tied to the home if there had been a stronger evidence of drug sales, had there been a search warrant, or even an arrest warrant. But I think that it breaks down just because . . . of the purpose of the officer's entry into the home. And that's what troubles me." The court noted, however, that "[t]his is a close one."

On May 27, 2009, the People filed a petition for writ of mandate in this court, in which they sought a writ vacating the trial court's order granting defendant's motion to suppress evidence and directing the court to enter a new order denying the motion. This court summarily denied the People's writ petition on June 15, 2009.[3]

After their writ petition was denied, the People announced in open court on June 22, 2009, that they were unable to proceed in this matter "[b]ased upon the motion to suppress and the ultimate suppression of the evidence." The trial court immediately dismissed the case. The People subsequently filed a notice of appeal from the dismissal order on July 8, 2009.

## IV.  DISCUSSION

### A.  *Appealability*

We will first consider the threshold issue of appealability. Defendant contends that the People's appeal is procedurally barred because this court summarily denied the People's petition for writ of mandate that had previously challenged the trial court's order granting the motion to suppress

---

[3] This court granted defendant's request to take judicial notice of the court file in the prior writ proceeding, *People v. Superior Court (Jahansson)* (June 15, 2009, H034264).

evidence. According to defendant, the plain language of section 1538.5, subdivision (j) (hereafter, section 1538.5(j)), authorizes the People to seek appellate review of an order granting a suppression motion, but requires the People to elect review either by writ or by appeal and does not allow "two bites of the appellate apple."

■ Our analysis begins with an overview of the People's right to appeal. It is well established that "[t]he prosecution's right to appeal in a criminal case is strictly limited by statute. [Citation.] Long-standing authority requires adherence to these limits even though 'the People may thereby suffer a wrong without a remedy.' [Citation]. The circumstances allowing a People's appeal are enumerated in section 1238." (*People v. Chacon* (2007) 40 Cal.4th 558, 564 [53 Cal.Rptr.3d 876, 150 P.3d 755]; see *People v. Williams* (2005) 35 Cal.4th 817, 823–824 [28 Cal.Rptr.3d 29, 110 P.3d 1239].) Relevant to this case, section 1238, subdivision (a)(7) authorizes the People's appeal from "[a]n order dismissing a case prior to trial made upon motion of the court pursuant to Section 1385 whenever such order is based upon an order granting the defendant's motion to return or suppress property or evidence made at a special hearing as provided in this code."

■ The Penal Code also allows the People to seek writ review of an order granting a motion to suppress evidence. Section 1538.5, subdivision (*o*) provides, "Within 30 days after a defendant's motion is granted at a special hearing in a felony case, the people may file a petition for writ of mandate or prohibition in the court of appeal, seeking appellate review of the ruling regarding the search or seizure motion." The California Supreme Court has stated that section 1538.5 "now provides multiple opportunities for immediate review by both parties of rulings on motions to suppress. . . . In felony cases, the People can petition for writ if the prosecution has not been dismissed on motion of the superior court pursuant to section 1385 (§ 1538.5, subd. (*o*)), and can appeal if it has (§ 1238, subd. (a)(7)) . . . ." (*People v. Laiwa* (1983) 34 Cal.3d 711, 717 [195 Cal.Rptr. 503, 669 P.2d 1278], fn. omitted.)

The issue of whether the People may seek appellate review of an order granting a motion to suppress evidence by both appeal and writ—first by a writ petition that is summarily denied, followed by an appeal from the dismissal order based upon the same suppression order—arises from the following language in section 1538.5(j): "If the [P]eople prosecute review by appeal or writ to decision, or any review thereof, in a felony or misdemeanor case, it shall be binding upon them." We observe that there is a split of authority as to the meaning of the word "decision" in section 1538.5(j).

In *People v. Carrington* (1974) 40 Cal.App.3d 647 [115 Cal.Rptr. 294] (*Carrington*), the appellate court determined that the People were required to

elect between writ review and review on appeal. The court reasoned that "[a] denial of a writ petition, without an opinion, is a decision for other purposes specified in the Rules on Appeal ([former] rule 24, Cal. Rules of Court). The denial of the People's petition for a writ contesting a trial court's grant of a motion to suppress evidence means resolution of the issue based on a full record of the evidence presented at the hearing on the motion. Appellate courts do not deny such petitions without consideration. Therefore, a denial by minute order of a petition by the People constitutes review by 'writ to decision' within the meaning of section 1538.5, subdivision (j); the result is binding on the People." (*Id.* at p. 650.) The *Carrington* court further stated, "If the People desire a written opinion, they may appeal after a dismissal instead of petitioning for a writ. But they may not exercise both remedies." (*Id.* at p. 651.)

■  However, no published decision has followed *Carrington* since its publication in 1974. We find that *Carrington* represents the minority view in light of subsequent appellate court decisions that have rejected the *Carrington* court's reasoning. The majority view is set forth in *People v. Allison* (1988) 202 Cal.App.3d 1084 [249 Cal.Rptr. 218] (*Allison*), where the court determined that denial of a writ petition without opinion does not constitute a decision on the merits unless there is an affirmative indication that the denial was on the merits. (*Id.* at p. 1087.) The *Allison* court therefore ruled that its prior denial by minute order of the People's writ petition challenging an order suppressing evidence did not preclude review of the same suppression order on appeal. (*Id.* at p. 1086.) The court concluded, "Here we denied the People's petition for writ of mandate without opinion and as an act of discretionary denial. That appellate order does not conclusively evidence that denial was upon the merits and so, it neither bars nor governs this decision [on appeal]. [Citations.]" (*Id.* at p. 1088; accord, *People v. Amaya* (1979) 93 Cal.App.3d 424, 427, fn. 1 [155 Cal.Rptr. 783] [appeal decided on the merits after summary denial of People's writ petition challenging suppression order]; *People v. Schmidt* (1978) 83 Cal.App.3d 968, 973 [148 Cal.Rptr. 426] [denial of People's writ petition without opinion does not preclude a subsequent appeal challenging suppression order]; *People v. Paris* (1975) 48 Cal.App.3d 766, 769–770 [122 Cal.Rptr. 272] [same].)

■  We agree with the majority view that summary denial of the People's writ petition challenging a suppression order does not preclude a subsequent appeal from a dismissal order based on that suppression order. Our determination is supported by the California Supreme Court's rulings regarding the procedural effect of summary denial of a writ petition. In *People v. Medina* (1972) 6 Cal.3d 484 [99 Cal.Rptr. 630, 492 P.2d 686] (*Medina*), the court determined, in the context of a defendant's appeal, that because "the appellate court's denial without opinion of defendant's . . . pretrial writ [petition] cannot properly be deemed a conclusive decision on the merits, and that

defendant is entitled to an appellate court's determination of his [or her] search and seizure contention 'in writing with reasons stated' (Cal. Const., art. VI, § 14), we must now decide the merits of that contention." (*Medina, supra*, 6 Cal.3d at p. 493.)

The California Supreme Court subsequently cited that ruling in *Medina* with approval in *Kowis v. Howard* (1992) 3 Cal.4th 888 [12 Cal.Rptr.2d 728, 838 P.2d 250] (*Kowis*), which addressed the issue of "when, if ever, summary denial of a pretrial petition for extraordinary relief establishes law of the case precluding reconsideration of the issue on appeal following final judgment." (*Id.* at p. 891.) The court stated, "In [*Medina*], *supra*, 6 Cal.3d at page 490, we expressed concern that if a summary denial of a writ petition established law of the case precluding consideration of the issue on appeal, then such 'pretrial writ review would become useless for no well-advised defendant would invoke that provision at the risk of losing the right to be heard at oral argument and to have the merits of his [or her] constitutional contention decided by a written opinion.' The same concern applies here. The parties should not be penalized for seeking pretrial review. If a writ petition is given full review by issuance of an alternative writ, the opportunity for oral argument, and a written opinion, the parties have received all of the rights and consideration accorded a normal appeal. Granting the resulting opinion law of the case status as if it had been an appellate decision is appropriate. But if the denial followed a less rigorous procedure, it should not establish law of the case." (*Id.* at p. 899.)

The *Kowis* court therefore ruled that "[a] summary denial of a writ petition does not establish law of the case whether or not that denial is intended to be on the merits or is based on some other reason." (*Kowis, supra*, 3 Cal.4th at p. 899.) Our Supreme Court affirmed its ruling in *Kowis* in *Lewis v. Superior Court* (1999) 19 Cal.4th 1232 [82 Cal.Rptr.2d 85, 970 P.2d 872], noting that "[o]ne of the policy reasons supporting our holding was that a contrary rule would prevent the losing party from having an opportunity for oral argument on the issues raised in the [writ] petition." (*Id.* at p. 1259.)

It is therefore well established under California Supreme Court authority that summary denial of a party's writ petition does not constitute law of the case and therefore does not preclude that party from seeking review on appeal, with the opportunity for oral argument and a written opinion, of the issues that were raised in the writ petition. (*Medina, supra*, 6 Cal.3d at p. 493; *Kowis, supra*, 3 Cal.4th at p. 891; *Lewis v. Superior Court, supra*, 19 Cal.4th at p. 1259.) This rule is consistent with the majority view that summary denial of the People's writ petition challenging an order granting a motion to suppress evidence does not constitute a "decision" within the meaning of section 1538.5(j) and therefore does not preclude a subsequent

appeal of the dismissal order based on the suppression order. We therefore determine that the People's appeal in the instant case is not barred by the summary denial of their writ petition, and we will decide the appeal on the merits.

For the guidance of the parties and the trial court, we will review the options for appellate review that are available to the People where the order granting the defendant's motion to suppress evidence has resulted in the People's inability to proceed with the prosecution. As one appellate court has stated, the "two methods for seeking appellate review are tailored to fit the two postures in which the People might find themselves following a successful motion to suppress evidence. In the first posture, the People have sufficient evidence to go forward despite the suppression of some evidence. Writ review would then be the preferable form of appellate review because it permits a speedy inspection of the trial court's ruling. . . . [¶] In the second posture, the People are unable to go forward without the suppressed evidence. In this situation, the People announce this fact to the trial court with the expectation that the matter will be dismissed on the court's own motion under section 1385. The People may then bring an appeal (although they are not required to) . . . ." (*People v. Bonds* (1999) 70 Cal.App.4th 732, 738–739 [83 Cal.Rptr.2d 10].)

Writ relief is rarely granted where appellate remedies are adequate. (See, e.g., *In re Antilia* (2009) 176 Cal.App.4th 622, 630 [97 Cal.Rptr.3d 849] [writ will not be issued if the challenged order is directly appealable or if appeal from a final judgment provides an adequate remedy].) Therefore, a writ petition challenging a trial court's suppression order, where that order has resulted in the People's inability to go forward without the suppressed evidence and the trial court may issue an appealable dismissal order under section 1385, is unlikely to succeed because there is an adequate appellate remedy. In those circumstances, a writ petition may unnecessarily consume the resources of both the court and the parties.

Having determined, however, that the People's appeal in this case is not procedurally barred, we will turn to the merits of the appeal.

B.   *The Motion to Suppress Evidence**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 202.

## V. DISPOSITION

The order of dismissal is affirmed.

Mihara, J., and McAdams, J., concurred.