Filed 7/29/15  P. v. Heinrichs CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040401 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. F24778) |
| v. | |
| NATHAN DAVID HEINRICHS, | |
| Defendant and Appellant. | |

Defendant Nathan David Heinrichs pleaded no contest to one felony count of maintaining a place to sell controlled substances (Health & Saf. Code, § 11366) after the trial court denied his renewed motion to suppress evidence (Pen. Code, § 1538.5).[1]

On appeal, Heinrichs argues the trial court erroneously denied his motion to suppress.  In addition, he claims the trial court erred by refusing to consider additional evidence, consisting of the transcript of a police dispatch recording, as well as a transcript of his interview with police at the scene of his arrest, which was not presented to the magistrate in connection with his initial suppression motion.  Heinrichs further contends the prosecution failed to disclose this additional evidence prior to his initial suppression motion in violation of *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).  Finally, Heinrichs argues his trial counsel was ineffective for failing to timely obtain the transcripts in question.

We find no error and will affirm the judgment.

---

[1] Unspecified statutory references are to the Penal Code.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

Because defendant's initial motion to suppress evidence was brought at the preliminary hearing, we summarize the facts adduced during that hearing.  (See *People v. Moore* (2006) 39 Cal.4th 168, 171; § 1538.5, subd. (i).)

### A.    *The report of a fight leading to the detention and arrest of Heinrichs*

On May 12, 2013, Santa Cruz County Sheriff's Deputy Anthony Gonzales[2] was on patrol in Watsonville.  At approximately 12:22 a.m., he was dispatched to 110 Silliman Road, a rural two-lane road which connects Highway 129 with another public road.  A caller had reported that a fight involving "G types," or gang members, was about to break out at the residence, with several individuals outside challenging other partygoers to a fight.  The caller said one of the people involved may have a gun.  At some point, dispatch advised Deputy Gonzales that some of the involved parties were African-American males.

Deputy Gonzales turned off Highway 129 on to Silliman Road.  He thought it was perhaps a half-mile from the turnoff to the reported address, with only one other residence in between.  As he turned on to Silliman Road, he shut off his lights and sirens because there was a clear line of sight from the reported address to the highway and he knew most people would scatter if they knew the police were coming.  Deputy Gonzales believed approximately five minutes elapsed between receiving the call from dispatch and arriving at the address.

As Deputy Gonzales drove towards the house, he could see people standing in the front yard.  He also saw a black Honda approaching him, driving away from the reported address.  Deputy Gonzales illuminated the interior of the Honda with his spotlight as it approached and saw two young men inside.  He did not recognize the driver, but

---

[2] At the time of the preliminary hearing, Deputy Gonzales was employed as a police officer in Clovis, California.

recognized the passenger, Heinrichs. Deputy Gonzales had contacted Heinrichs three or four times previously while on patrol and with the gang task force and knew that Heinrichs was a "documented Northern criminal street gang member." Because there had been a report that gang members were involved in a fight, Deputy Gonzales pulled in front of the Honda, forcing it to stop.

Due to the mention of a gun, Deputy Gonzales and his partner, Deputy Nunez, drew their weapons and ordered Heinrichs and the driver to put their hands up and touch the ceiling of the Honda. They initially complied, but Heinrichs then dropped below the dashboard for perhaps two seconds before coming up and placing his hands on the ceiling again. When more officers arrived on the scene, Deputy Gonzales ordered Heinrichs and the driver to exit the vehicle. As Heinrichs got out, he again bent down out of sight, but then "popped back up again real fast." He was handcuffed and placed in a police vehicle without incident.

As Deputy Gonzales approached the passenger side of the Honda, he saw a black square underneath the car. The square turned out to be a digital scale in a leather case. On the passenger side floorboard, Deputy Gonzales found a plastic baggie and a cell phone. The baggie contained 20 clear gel capsules each of which were filled with a white crystal substance which resembled methamphetamine.[3] The back of the cell phone had been removed and the battery taken out. When Deputy Gonzales put the battery back in, he noted that there were gang members listed in the cell phone's contacts.

Heinrichs had an iPhone and $241 in cash on his person. After obtaining a search warrant for the iPhone, Deputy Gonzales downloaded its contents. Five or six text messages on the iPhone appeared to reference drug sales.

---

[3] Deputy Gonzales testified the substance later tested presumptive positive for methamphetamine with a total weight of 4.87 grams.

B.      *Initial motion to suppress*

At the preliminary hearing, Heinrichs moved to suppress all evidence obtained in connection with his warrantless search and arrest on the ground that Deputy Gonzales had no basis for stopping or detaining him the morning of May 12, 2013.  The magistrate denied the motion finding there was sufficient cause for Deputy Gonzales to stop Heinrichs and held Heinrichs to answer on the allegations set forth in the complaint.[4]

C.      *The information and the renewed motion to suppress*

On August 21, 2013, the People filed an information charging Heinrichs with one felony count of possession of a controlled substance (methamphetamine) for sale (Health & Saf. Code, § 11378).  Heinrichs brought a renewed motion to suppress the evidence pursuant to section 1538.5, subdivision (i), along with a motion to dismiss the information pursuant to section 995.  In connection with the renewed motion to suppress, Heinrichs sought to submit supplemental evidence which had not been presented at the preliminary hearing, consisting of the audio recording and transcript of the dispatch communications with Deputy Gonzales.

At the hearing on the motion to suppress, the trial court denied Heinrichs' request to consider the supplemental evidence on the ground the defense knew there was a dispatch tape and recordings prior to the preliminary hearing and could reasonably have obtained that evidence in time to present it at that hearing.  The trial court also expressly noted that even if it had considered the evidence in connection with the renewed motion, it was "not persuaded that there's anything there that changes what [the magistrate] determined . . . at the preliminary hearing."  Accordingly, the trial court denied both the renewed motion to suppress and the motion to dismiss the information.

_____

[4] The complaint, filed May 15, 2013, charged Heinrichs with one count of felony possession of a controlled substance (methamphetamine) for sale (Health & Saf. Code, § 11378).

4

*D.      Heinrichs' change of plea and sentencing*

On November 21, 2013, pursuant to a plea agreement, Heinrichs pleaded no contest to a felony count of maintaining a place to sell controlled substances (Health & Saf. Code, § 11366).[5] The trial court dismissed the felony possession charge (*id.*, § 11378) and placed Heinrichs on formal probation for a period of three years, conditional on him serving 180 days in county jail.[6]

Heinrichs' initial notice of appeal was filed November 22, 2013. He subsequently filed an amended notice of appeal and request for certificate of probable cause which the trial court issued on February 4, 2014.

**II.      DISCUSSION**

*A.      The suppression motion was properly denied*

Heinrichs argues the suppression motion should have been denied because Deputy Gonzales had no reasonable suspicion that Heinrichs was involved in any criminal activity. We disagree.

*1.      Standard of review and relevant Fourth Amendment principles*

Where a suppression motion is made before a magistrate judge in conjunction with a preliminary hearing, the magistrate acts as the trier of fact. (*People v. Laiwa* (1983) 34 Cal.3d 711, 718 (*Laiwa*), superseded by statute on another ground as stated in *People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1223.) Where, as here, the matter is raised a second time in the superior court on the basis of the preliminary hearing transcript, the superior court is bound by the magistrate's factual findings and must accept them so long as they are supported by substantial evidence. (§ 1538.5, subd. (i); *People v. Ramsey* (1988) 203 Cal.App.3d 671, 679.) In such circumstances, the superior court acts as a

---

[5] This count was added to the information on the People's motion at the November 21 plea hearing.

[6] Heinrichs was also subjected to a variety of probation conditions and ordered to pay various fines and fees, none of which he challenges on appeal.

reviewing court. In performing this function, the court must respect the magistrate's ability "to judge credibility, resolve conflicts, weigh evidence and draw inferences . . . ." It must also draw "all presumptions in favor of the magistrate's factual" findings and uphold "them if they are supported by substantial evidence." (*People v. Bishop* (1993) 14 Cal.App.4th 203, 214.)

On appeal from the superior court's ruling, we are similarly bound by the magistrate's findings. (*People v. Trujillo*, *supra*, 217 Cal.App.3d at p. 1224.) This court disregards the ruling of the superior court and directly reviews the decision of the magistrate. Thus, we review the magistrate's factual findings to determine whether they are supported by substantial evidence, but independently review the magistrate's determination that the search did not violate the Fourth Amendment. (*Laiwa*, *supra*, 34 Cal.3d at p. 718.)

The Fourth Amendment to the United States Constitution guarantees the right to be free of unreasonable searches and seizures by law enforcement personnel. (*People v. Maury* (2003) 30 Cal.4th 342, 384.) However, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 123.) " 'Although police officers may not arrest or search a suspect without probable cause and an exception to the warrant requirement, they may temporarily detain a suspect based only on a "reasonable suspicion" that the suspect has committed or is about to commit a crime.' " (*People v. Durazo* (2004) 124 Cal.App.4th 728, 734.) In evaluating a particular detention, the reviewing court must consider the " 'totality of the circumstances--the whole picture' . . . ." (*Alabama v. White* (1990) 496 U.S. 325, 330.)

     2.     *Analysis*

Under the circumstances here, Deputy Gonzales' detention of Heinrichs was reasonable. As articulated by the magistrate, the pertinent facts were these: "[W]e have 12:22 in the morning. We have a rural area. We have one vehicle on the road coming

6

from the general area where this occurred and we do have the description of a gang member and Deputy . . . Gonzales indicated he recognized . . . Heinrichs and knows he's a documented Norteño gang member." These findings were supported by substantial evidence and, given the reports of gang members being involved in an altercation along with the report that someone at the party mentioned having a firearm, this particular stop did not violate the Fourth Amendment.

### B. *Refusal to consider additional evidence*

Heinrichs next argues the trial court erred in refusing to consider the additional evidence, consisting of transcripts of both the dispatch recording and Deputy Gonzales' interview with him at the time of his arrest, proffered at his renewed suppression hearing.

Section 1538.5, subdivision (i) provides, in pertinent part: "If the motion was made at the preliminary hearing, unless otherwise agreed to by all parties, evidence presented at the special hearing shall be limited to the transcript of the preliminary hearing and to evidence that could not reasonably have been presented at the preliminary hearing, except that the people may recall witnesses who testified at the preliminary hearing. If the people object to the presentation of evidence at the special hearing on the grounds that evidence could reasonably have been presented at the preliminary hearing, the defendant shall be entitled to an in camera hearing to determine that issue. The court shall base its ruling on all evidence presented at the special hearing and on the transcript of the preliminary hearing, and the findings of the magistrate shall be binding on the court as to the evidence or property not affected by evidence presented at the special hearing."

Whether evidence reasonably could have been presented at the preliminary hearing is predominantly a factual question and its determination is reviewed under the substantial evidence standard. (See *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 284 [factual determinations reviewed for substantial evidence]; see also *People v. Velasco* (2011) 194 Cal.App.4th 1258, 1262 [substantial evidence standard applies to the

7

factual determination that the state acted in good or bad faith in failing to preserve evidence].)

The trial court denied the request to admit supplemental evidence as it "was reasonably obtainable prior to the preliminary hearing[,] . . . [a]nd recognizing that Deputy Gonzales was going to be the critical witness at the motion to suppress and at that preliminary hearing, the dispatch tape and the tape-recorded interview . . . are matters which the defense should have obtained and didn't."

The trial court's determination is supported by substantial evidence. Heinrichs' initial suppression motion referenced the dispatch information and therefore his counsel was certainly aware there was an exchange between Deputy Gonzales and dispatch regarding the reports that were coming in about the potential fight. The trial court found the dispatch information was reasonably obtainable prior to the preliminary hearing. Deputy Gonzales was specifically cross-examined during the preliminary hearing about the details of what was reported to him by dispatch as he responded to the scene. The trial court did not err by denying Heinrichs' motion to admit the additional evidence.

C.    *The additional evidence would not have altered the result*

However, regardless of whether the trial court erred in refusing to admit the additional evidence, we agree with the trial court its admission would not have changed the result.

At the preliminary hearing, Deputy Gonzales testified he received information "some of the involved parties may be African-American males." According to the dispatch transcript, the officers were told that the reporting party "advis[ed] it's an aggressive group of six males, possible G-types" waiting outside to fight. When asked who mentioned the gun, dispatch responded, "possibly a black male adult wearing a dark flannel . . . and they're all black male adults." Dispatch subsequently reported the number of people involved had increased to perhaps 20 with people from inside the house coming outside to "confront[] the G-types."

8

This transcript does not, as Heinrichs suggests, materially impeach Deputy Gonzales' testimony. Although the reporting party initially said that the people outside the house were "G-types" and "all black male[s]" who were challenging those inside the house to come out and fight, dispatch subsequently advised that a number of people from inside had gone outside to confront the challengers. Dispatch was not clear about whether it had been apprised of the race or ethnicity of those other people, since that information was not broadcast to Deputy Gonzales. At the time he was approaching the address, Deputy Gonzales knew the following: (1) approximately six black males were outside a house challenging two of the people inside the house to come out and fight; (2) the black males were all "G-types"; (3) one of the black males mentioned a gun; and (4) up to 14 people--whose race and ethnicity had not been made clear--had gone outside to confront the six black males. Deputy Gonzales' testimony that dispatch reported "some of the involved parties may be African-American males" is not materially impeached by the transcript. The race or ethnicity of those *inside* the house who responded to the challenge made by the black males *outside* the house was never mentioned by the reporting party. Since the report was that some black gang members were challenging people inside a house to a fight and Deputy Gonzales subsequently saw Heinrichs, whom he recognized as a "Northern" gang member or affiliate, leaving the scene, it was reasonable for him to assume that Heinrichs may have been involved in the reported incident.

Heinrichs also suggests the dispatch transcript demonstrates Deputy Gonzales had no reason to stop a vehicle leaving the scene of the incident because the reporting party gave no descriptions of vehicles that may have belonged to any of the parties involved. Given the rural location, it was doubtful that the 20 or so people involved all walked to the address. Based on the time of the incident (early in the morning) and the location, it was reasonable for Deputy Gonzales to think that the vehicle driving toward him on that road was occupied by people who may be involved.

9

Finally, Heinrichs claims that the transcript of his interview in the field contradicts Deputy Gonzales' testimony that he recognized Heinrichs as a gang member. It does not.

In the interview, Deputy Gonzales said, "I know you from your history, from the past, um, and I've talked to you before. Uh, so I saw you leaving. Obviously, I don't know what your status is right now. Uh, if you're active or inactive or whatever. Either way, you know, we don't take any chances with stuff like that. We take it very seriously 'cause we don't know if somebody had a gun." At the preliminary hearing, Deputy Gonzales testified he had contacted Heinrichs on "three or four [previous] occasions" and recognized him as "a documented Northern criminal street gang member." The fact that Deputy Gonzales advised Heinrichs that he did not know whether he was currently an active gang member does not invalidate his personal knowledge that Heinrichs was a documented gang member with whom he had three or four prior contacts.

In short, there is nothing in any of the additional evidence presented to the trial court which would have discredited Deputy Gonzales' testimony to such an extent that the motion to suppress would have been granted.

### D.    *There was no* Brady *violation*

Heinrichs contends the prosecution's failure to provide the transcripts of the dispatch recording and his interview with Deputy Gonzales prior to the preliminary hearing was a violation of his constitutional due process rights under *Brady*. We disagree.[7]

The Due Process Clause of the federal Constitution requires that the prosecution disclose to the defendant information that is both material and exculpatory. (*Brady*, *supra*, 373 U.S. at p. 87.) "There are three components of a true *Brady* violation: The

---

[7] The People contend Heinrichs' no contest plea amounts to a waiver of his right to bring a *Brady* claim. We need not decide this question since we find, on the merits, no *Brady* violation occurred.

10

evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." (*Strickler v. Greene* (1999) 527 U.S. 263, 281-282.) The *Brady* rule "encompasses evidence 'known only to police investigators and not to the prosecutor.' [Citation.] In order to comply with *Brady*, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.' " (*Id.* at pp. 280-281.)

The People have a duty to disclose any favorable and material evidence even without a request by the accused. (*Brady*, *supra*, 373 U.S. at p. 87; *In re Sassounian* (1995) 9 Cal.4th 535, 543.) Evidence is " 'favorable' " under *Brady* "if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses." (*In re Sassounian*, *supra*, at p. 544.) Evidence is material, where there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." (*United States v. Bagley* (1985) 473 U.S. 667, 682.)

On appeal, the defendant has the burden to establish the elements of a *Brady* violation. (*Strickler v. Greene*, *supra*, 527 U.S. at pp. 289, 291.) A court reviewing a suspected *Brady* violation independently reviews the question of whether such a violation has occurred but gives "great weight to any trial court findings of fact that are supported by substantial evidence." (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 176.)

Before turning to the merits of Heinrichs' claim, we first address the People's argument that *Brady* does not require the production of impeachment evidence to the defense before the preliminary examination and hearing on the suppression motion. We disagree with this conclusion.

11

"A defendant who has pleaded not guilty and will have a preliminary hearing occupies a vastly different position than one who is considering waiving his or her constitutional rights and admitting guilt pursuant to a preindictment plea offer." (*Bridgeforth v. Superior Court* (2013) 214 Cal.App.4th 1074, 1086 (*Bridgeforth*).) "Preliminary hearings . . . serve to protect both the liberty interest of the accused and the judicial system's and society's interest in fairness and the expeditious dismissal of groundless or unsupported charges, thereby avoiding a waste of scarce public resources. Requiring prosecutorial disclosure of information that is both favorable to the defense and material to the magistrate's determination of 'whether there exists probable cause to believe that the defendant has committed a felony' (§ 866, subd. (b)) provides a valuable additional safeguard for these extremely important interests." (*Id.* at p. 1087.)

As *Bridgeforth* notes, however, the right to disclosure of information prior to the preliminary examination is not without limitation. Rather, "the precise scope of a defendant's due process right to disclosure and the determination of whether that right has been violated are necessarily tailored to the context and purpose of the preliminary hearing. [Citations.] Accordingly, the standard of materiality is whether there is a reasonable probability that disclosure of the exculpatory or impeaching evidence would have altered the magistrate's probable cause determination with respect to any charge or allegation." (*Bridgeforth*, *supra*, 214 Cal.App.4th at p. 1087.)

The materials in question here would have been, as we concluded above, insufficient to change the magistrate's decision to deny Heinrichs' suppression motion. Neither the dispatch transcript nor the transcript of Heinrichs' field interview contained evidence which directly contradicted Deputy Gonzales' testimony at the preliminary hearing. There were reports that a number of black male gang members were standing outside a house, challenging some of the occupants to come out and fight. One of the black males mentioned a gun. A number of people, of unknown race or ethnicity, came outside in response to that challenge. As Deputy Gonzales approached the reported

12

address, located on a rural road with few homes, he observed a vehicle approaching and recognized the passenger, Heinrichs, as a Northern gang member.  Although the additional evidence Heinrichs sought to introduce at his renewed suppression hearing could be described as *potentially* impeaching, there is no reasonable probability that the inclusion of that evidence at the initial suppression hearing would have resulted in the magistrate granting the motion to suppress.  Consequently, the People's failure to provide that evidence did not violate *Brady*.

###### E.     *There was no ineffective assistance of counsel*

Finally, Heinrichs contends his trial counsel was incompetent for failing to obtain the dispatch tape and tape of his field interview with Deputy Gonzales prior to the suppression hearing.

"To establish constitutionally inadequate representation, a defendant must demonstrate that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant."  (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1057-1058; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.)

Our review of a claim of ineffective assistance of counsel is highly deferential; we must make every effort to avoid the distorting effects of hindsight and to evaluate the challenged conduct from counsel's perspective at the time.  (*In re Jones* (1996) 13 Cal.4th 552, 561; *Strickland v. Washington*, *supra*, 466 U.S. at p. 689.)  A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance.  (*Strickland v. Washington*, *supra*, at p. 689; *People v. Hart* (1999) 20 Cal.4th 546.)

As to the prejudice prong, "[t]he United States Supreme Court [has] explained that this second prong of the *Strickland* test is not solely one of outcome determination.

13

Instead, the question is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.' " (*In re Harris* (1993) 5 Cal.4th 813, 833.) A defendant must prove prejudice that is a " 'demonstrable reality,' not simply speculation." (*People v. Williams* (1988) 44 Cal.3d 883, 937; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

As we have made clear above, the additional evidence which Heinrichs' trial counsel failed to obtain prior to the initial suppression hearing would not have changed the result of that hearing. Accordingly, counsel's failure was not prejudicial and thus cannot support the claim that Heinrichs received constitutionally ineffective assistance of counsel.

## III. DISPOSITION

The judgment is affirmed.

_____

Walsh, J.[*]


WE CONCUR:


_____

Rushing, P. J.


_____

Elia, J.


People v. Heinrichs
H040401

_____

[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.